GANTON TECHNOLOGIES,
INC., Plaintiff,

v.

QUADION CORPORATION and
O.H. Materials Corporation,
Defendants,

and

QUADION CORPORATION, Cross-claimant, Counterclaimant and
Third Party Plaintiff,

v.

GANTON TECHNOLOGIES, INC., Counterclaim Defendant, O.H. Materials Corporation, Crossclaim Defendant, H.D.R. Infrastructure, Inc., Delores H. Mache, The John Mache Declaration of Trust, dated August 1, 1973, John Doe and Mary Roe as Beneficiaries of The John Mache Declaration of Trust, The First National Bank of Des Plaines, as Trustee of The John Mache Declaration of Trust, NBD Park Ridge Bank as Trustee of the John Mache Declaration of Trust, and NBD Trust Company of Illinois, as Trustee of the John Mache Declaration of Trust, Third Party Defendants.

Nos. 89 C 6869, 89 C 3536.

United States District Court,
N.D. Illinois, E.D.

Oct. 4, 1993.

Robin Lee Roberts, Mayer, Brown & Platt, Peter J. Miller, Richard Lee Stavins, Robbins, Salomon & Patt, Ltd., Chicago, IL, for Ganton Technologies, Inc.

Nicholas Frank Esposito, Terence Michael Heuel, Mark A. Schram, Esposito, Heuel & Schramm, Chicago, IL, Byron E. Starns, Ilsley Dan Colton, Susan M. Robiner, Leonard, Street & Deinard, Minneapolis, MN, for Quadion Corp.

Paul W. Schroeder, Cheryl Lynn Urbanski, Jones, Day, Reavis & Pogue, Chicago, IL, E. Joel Wesp, James R. Vaughn, Kevin J. Osterkamp, Roetzel & Andress, LPA, Columbus, OH, for O.H. Materials Corp.

Edmund B. Moran, Jr., Chicago, IL, for John Mache Declaration of Trust, Dated August 1, 1973, John Doe and Mary Doe, as beneficiaries of the John Mache Declaration of Trust.

Robert L. Graham, Kenneth A. Kroot, Jenner & Block, Benjamin P. Beringer, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, IL, for NBD Park Ridge Bank, NBD Trust Co. of Illinois and Delores H. Mache.

Daniel J. Dowd, Dowd, Dowd & Mertes, Ltd., Des Plaines, IL, for First Nat. Bank of Des Plaines.

## MEMORANDUM OPINION
### AND ORDER (VI)

HOLDERMAN, District Judge:

Third party defendant HDR Engineering, Inc. ("HDR") moves to dismiss the amended third-party complaint of Quadion Corporation ("Quadion"). HDR also moves for a protective order. Defendant and cross-claim defendant O.H. Materials Corporation ("OHM") moves to dismiss Count III, IV, V, and VI of Quadion's amended cross-claim. HDR's motion to dismiss is granted in part and denied in part. HDR's motion for a protective order is denied. OHM's motion to dismiss is granted in part and denied in part.

### BACKGROUND

The facts of this complex, consolidated case were discussed in opinions dated May 17, 1990, 738 F.Supp. 270 ("Opinion I"), December 21, 1990, 755 F.Supp. 203 ("Opinion II"), June 11, 1991, 1991 WL 11170 ("Opinion III"), and March 26, 1992, 1992 WL 71658 ("Opinion IV") and will not be repeated here.

Quadion's amended cross-claim contains six counts against OHM:

1. Breach of Contract;
2. Negligence;
3. CERCLA Cost Recovery;
4. CERCLA Contribution;
5. CERCLA Declaratory Judgment;
6. Strict Liability;
7. Indemnity and/or Contribution.

(Quadion's Amended Cross–Claim, pp. 16–25).

OHM moves for dismissal of the CERCLA counts (III, IV & V) on the grounds OHM is not a "responsible party" under CERCLA, and for dismissal of Count VI on the grounds OHM's activities are not abnormally dangerous. (OHM's Motion to Dismiss, p. 2).

Quadion's amended third party complaint asserts the following claims against HDR:

1. Breach of Contract;
2. Negligence;
3. CERCLA Cost Recovery;
4. CERCLA Contribution;
5. CERCLA Declaratory Judgment;
6. Strict Liability.

(Quadion's amended third party complaint, pp. 18–28).

HDR moves for dismissal on the following grounds:

1. Count I fails because HDR had no control over OHM's activities, HDR has no duty to indemnify Quadion, and the contract contains a disclaimer of warranties;

2. Count II fails because economic losses are not recoverable in tort, and law of the case indicates HDR is not liable for negligence;

3. The CERCLA counts (III, IV & V) fail because HDR is not an "owner or operator," there was no disposal during HDR's tenure, and any disposal was merely passive;

4. Count VI fails because Illinois does not impose strict liability for pollution-causing activities;

5. Quadion's request for attorney's fees fails because they are not permitted under CERCLA.

(HDR's Motion to Dismiss, pp. 1–4).

## ANALYSIS

In ruling on a motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. De Kalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In addition, the court must view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. *Strict Liability*

■ Both HDR and OHM move for dismissal of the counts based on strict liability. This court concludes that the clean up of PCB's from an industrial site is not an abnormally dangerous activity that warrants the application of strict liability.

While the parties have cited a variety of state court cases, the Seventh Circuit provides definite guidance on this matter. In *Indiana Harbor Belt R. Co. v. American Cyanamid Co.,* 916 F.2d 1174 (7th Cir.1990), the Seventh Circuit held that a chemical manufacturer which shipped a flammable, toxic chemical in a railroad tank car through a densely populated metropolitan area was not strictly liable for the consequences of the spill. In applying Illinois law, the court listed the six factors that were typically evaluated in ascertaining whether an activity was abnormally dangerous and strict liability was warranted:

1. the risk of harm is great;

2. the harm, if any occurred, would be substantial;

3. the harm could not be prevented by the use of reasonable care.

4. the activity is not a common one;

5. the activity is inappropriate for the place it is performed;

6. the value to the community of the activity does not offset its risk.

*Id.* at 1177.

The Seventh Circuit in *Indiana Harbor Belt* focused primarily on the third factor, and concluded any risk involved in the transportation of the chemical could be eliminated by use of reasonable care. *Id.* The court noted that if the harm associated with any activity could be eliminated by reasonable care, there was no need for strict liability to apply. *Id.* Negligence was the preferred standard in those cases. *Id.* The court further noted that strict liability was more likely to attach to a storer of hazardous materials, due to their greater control over the materials, than a shipper. *Id.* at 1179. The court stated that the analysis should focus not on the substance, but on the activity which involves the substance. *Id.* at 1181.

As for PCBs, the Seventh Circuit has noted that no court has held the manufacture of PCB's is an abnormally dangerous activity. *City of Bloomington, Ind. v. Westinghouse Elec.,* 891 F.2d 611, 616 n. 7 (7th Cir.1989).[1] In the context of a manufacturer, the court stated that the "risks associated with the disposal of PCB's could have been eliminated by the exercise of reasonable care." *Id.* at 616.

This court concludes that the PCB cleanup activities are not abnormally dangerous. There is no basis for believing any risk of harm could not be eliminated by the use of reasonable care. *See Westinghouse Electric,* 891 F.2d at 616. Further, focusing on the

---

1. The *Westinghouse Elec.* case applies Indiana law, but the Seventh Circuit has noted Illinois and Indiana law do not differ on these issues. *Id.* at 616.

activity, rather than just the toxic substance, per *Indiana Harbor,* 916 F.2d at 1181, clean-up operations serve the valuable and essential social function of *reducing* the danger of PCBs.

## B. *CERCLA Liability*

Both OHM and HDR seek dismissal of the CERCLA-based claims. This court concludes that the CERCLA claims against both OHM and HDR are sufficient to survive the motion to dismiss.

The cases from this jurisdiction dealing with this issue are not analogous factually. *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155 (7th Cir.1988); *Brookfield–North Riverside Water Commission v. Martin Oil Marketing, Ltd.,* No. 90 C 5884, slip op., 1992 WL 63273 (N.D.Ill. March 12, 1992) (Judge Parsons); *United States v. Petersen Sand and Gravel, Inc.,* No. 91 C 5835, 1992 WL 281407 (N.D.Ill. Oct. 7, 1992) (Judge Conlon).

The leading Seventh Circuit case, *Edward Hines,* held that a supplier of wood preserving chemicals was not liable to a lumber company owner for clean up expenses. 861 F.2d at 157–158. Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) imposes clean up liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." *Id.* at 156. The court concluded that the chemical supplier was not an "owner or operator", despite the fact the supplier had designed and built the plant for the lumber company, had trained the lumber company's employees, and had a right to inspect the operation. *Id.* at 157. The court held that even though the chemical supplier designed and built the plant, it never operated it. *Id.* at 158. The supplier had immediately turned over the "turnkey operation" to the owner, who actually operated the finished facility from the beginning. *Id.* The court noted that the "statute does not fix liability on slipshod architects, clumsy engineers, poor construction contractors, or negligent suppliers of on-the-job training ..." *Id.* at 157.

*Hines,* as do most of the cases, deals with what Quadion has called "classical contrac-tors," rather than pollution clean-up contractors. Quadion, in essence, alleges that OHM and HDR were hired to clean up PCB contamination at Quadion's facility. Quadion further alleges that instead of cleaning up the existing contamination, they exacerbated the problem by contaminating previously uncontaminated areas. The difficulty facing this court is applying a complex statute to the apparently fairly novel claims of Quadion. Further, this court must do so with limited guidance from its appellate court.

OHM and HDR both argue that they are not liable under CERCLA because 1) no "disposal" of hazardous material took place, as rearranging pre-existing contaminated material is not "disposal;" 2) neither party was an "owner or operator" because they had no "control" over the cause of the contamination. (OHM's Memorandum in Support, pp. 10–16; HDR's Memorandum in Support, pp. 5–8; OHM's Memorandum in Reply pp. 3–6; HDR's Memorandum in Reply, pp. 2–6).

The Seventh Circuit has not definitely resolved the issue of what constitutes a "disposal," nor the issues of what constitutes an "operator" in "control." The district courts have grappled with some of the issues, but in factually different contests.

Judge Parsons concluded that a hazardous substance could not be released (or presumably disposed of) more than once. *Brookfield North,* slip op. at 14. *See also U.S. v. Petersen Sand and Gravel, Inc.,* slip op. at 8–16 (rejecting a "passive disposal" theory for similar reasons). Neither case, however, dealt with pollution clean up contractors who exacerbated a pre-existing contamination. Further, the only two circuit courts to decide whether a dispersion of a pre-existing contamination constituted a new "disposal" decided in the affirmative. *Kaiser Aluminum v. Catellus Dev.,* 976 F.2d 1338, 1342 (9th Cir.1992); *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568 (5th Cir.1988).

In *Kaiser,* an excavator grading a section of land for a proposed housing development who spread some displaced contaminated soil from the property over other parts of the property was held liable under CERCLA.

976 F.2d at 1340–41. The court stated that operators liability under Section 9607(a)(2) only attaches "if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment." *Id.* at 1341. The court concluded the excavator was an "operator," as the allegations indicated the excavator controlled the phase of the development (excavating and grading) in which the additional contamination occurred. *Id.* at 1342. As to whether a "disposal" occurred, the Ninth Circuit concluded Congress did not intend for "disposal" to be limited to only the initial introduction of hazardous material onto a property. *Id.*

■ Based on *Kaiser*, this court concludes OHM and HDR could be liable as "operators". Quadion has alleged that they controlled the activities in which the additional contamination took place—the clean up operations.[2] Control is even clearer than in *Kaiser*. While the excavator controlled the grading and excavating and only inadvertently dealt with the contaminated material, OHM and HDR were hired to deal with the hazardous material.

■ As to disposal, this court follows *Kaiser* and holds that "disposal" is not limited to the initial introduction of contaminants into a site. This broad view of disposal is in conformity with the Seventh Circuit's most recent opinion, *Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746 (7th Cir.1993). The Seventh Circuit noted that whether a particular action constitutes a disposal can depend on the context of the entire situation; for example, an accidental spill may not be a "disposal" for a shipper, but it may be a "disposal" for a hazardous waste dump operator. 2 F.3d at 750.

Further, holding clean up contractors liable under CERCLA is consistent with the policies of CERCLA. As stated by Judge Parsons "CERCLA was intended to tax those who profit or benefit from their disposal. Thus, Congress included within the statute generators, transporters, and dumpsite owners or operators as potential responsible parties." *Brookfield–North,* slip op. at 23–24. Clean up contractors fall in this category.

### C. Negligence Claim Against HDR

Quadion's first attempt at pleading a negligence action against HDR was dismissed by this court based on *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). (Opinion II, pp. 207–08). This court concluded the *Moorman* doctrine prevents economic damages from being recovered in a tort action. (*Id.*) This court concluded Quadion's allegation did not allege personal injury or property damage, but sought cost recovery for remediation and decontamination of the facility—economic losses. (*Id.* at 208.)

HDR maintains the pleadings are again defective in this regard. (HDR's Memorandum in Support, pp. 9–10).

While it is a close question, this court concludes the amended pleadings sufficiently allege damages to previously undamaged property to survive the pleadings stage.

### D. Contract Claim Against HDR

■ Quadion's original contract claim survived HDR's first motion to dismiss. (Opinion II, pp. 206–07). HDR maintains that the claim should be dismissed on three grounds:

1. the claim is based on supervisory and review services that HDR did not contract to perform;

2. the claim is really one for indemnity, which this court previously disallowed;

3. Quadion cannot recover against HDR because the contract contained a disclaimer of warranties and guaranties clause. (HDR's Memorandum in Support, pp. 10–19).

HDR's first argument is unpersuasive. As stated earlier, there are issues of fact as to

---

**2.** The control question is somewhat closer for HDR, which maintains that OHM was entirely in control of the clean up, and that HDR was merely an observer. (HDR's Memorandum in Support, pp. 10–13). Quadion, however, points out that HDR's own reports (attached to Quadion's complaint) indicate HDR actively supervised and directed OHM personnel. (Quadion's Memorandum in Response, pp. 16–19). This court has previous looked to "authority to control", rather than actual "hands on control", in evaluating operator status. Opinion III, p. 9 n. 5. Thus, the pleadings are adequate to survive the motion to dismiss.

the actual supervisory/control relationship between HDR and OHM, as indicated by the HDR report materials attached to the complaint. (*See* Footnote 2, *supra.*)

HDR's third argument is also unpersuasive. This court stands by its earlier conclusion in Opinion II, and concludes that accepting HDR's position would result in the standard of performance clause being made meaningless.

As to HDR's second argument, Quadion seems to have requested the same damages it did in its first contract claim, which this court held passed muster. What damages Quadion will be able to prove up is not a matter to be decided at this stage of the proceeding. Quadion's contract claim is adequately plead.

### E. *Attorney's Fees Under CERCLA*

As the parties have noted, the federal courts are deadlocked on this issue. The Seventh Circuit has not addressed the issue, and the district courts have reached conflicting results. *BTR Dunlop, Inc. v. Rockwell International Corp.,* No. 90 C 7414, 1993 WL 326599, 1993 U.S. Dist. LEXIS 1720 (N.D.Ill. Feb. 16, 1993) (J. Gottschall holding such fees are recoverable); *U.S. Steel Supply, Inc. v. Alco Standard Corp.,* No. 89 C 20241, 1992 WL 229252, 1992 U.S. Dist. LEXIS 13722 (N.D.Ill. Sept. 9, 1992) (J. Rozkowski holding such fees are not recoverable); *Amcast Industrial Corp. v. Detrex Corp.,* 822 F.Supp. 545 (N.D.Ind.1992) (J. Miller holding such fees are recoverable); *Evco Associates, Inc. v. C.J. Saporito,* No. 92 C 2038, 1993 U.S. Dist. LEXIS 12423, 1993 WL 348691 (N.D.Ill. Sept. 7, 1993) (J. Leinenweber reserving the question).

The circuit courts are similarly split. In the most recent decision, *Stanton Road Associates v. Lohrey Enterprises,* 984 F.2d 1015, 1017–1020 (9th Cir.1993), the Ninth Circuit held attorney's fees were not recoverable response costs under CERCLA, explicitly rejecting the Eight Circuit's differing view in *General Elec. Co. v. Litton Indus. Automation Sys. Inc.,* 920 F.2d 1415 (8th Cir. 1990) *cert. den.* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991).

Given the conflicting state of the law, and the very limited arguments made by the parties, this court will reserve this issue pending further development of the record and more thorough briefing of the issue by the parties.

### F. *Protective Order*

HDR requested a protective order delaying discovery pending the resolution of pending motions, in particular HDR's motion to dismiss. Given this court's decision regarding HDR's motion to dismiss, HDR's protective order also must be denied.

### *CONCLUSION*

For the reasons stated above, HDR's motion for a protective order is DENIED, HDR's motion to dismiss is GRANTED IN PART AND DENIED IN PART, OHM's motion to dismiss is GRANTED IN PART AND DENIED IN PART. The parties are strongly urged to discuss settlement of the cases. The case is set for further status on October 21, 1993 at 10:00 a.m.