883 P.2d 424

Robert PEREZ, as Personal Representative of Anne M. Perez, Deceased, Plaintiff/Appellee/Cross–Appellant,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Delaware corporation, Defendant/Appellant/Cross–Appellee.

No. 2 CA–CV 93–0008.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 21, 1993.

Review Denied Nov. 1, 1994.

Miller, Pitt & McAnally, P.C. by Philip Hall and Jonathan Reich, Tucson, for plaintiff/appellee/cross-appellant.

Byrne, Beaugureau, Shaw, Zukowski & Hancock, P.C. by Anthony J. Hancock and Amy Schwartz, Phoenix, for defendant/Appellant/cross-appellee.

## OPINION

FERNANDEZ, Judge.

This appeal and cross-appeal arise from a judgment entered, following a trial to the court, in favor of appellee/cross-appellant Robert M. Perez, as personal representative of Anne M. Perez, on his claim for strict liability for an abnormally dangerous activity against appellant/cross-appellee Southern Pacific Transportation Company and denying his claims for negligence and products liability.

Southern Pacific filed a third-party complaint to allocate the liability among various suppliers and manufacturers of asbestos and asbestos-containing products. The complaint was served on the third-party defendants, but dismissed prior to trial and is not part of this appeal.

Southern Pacific argues that the court's finding of strict liability for abnormally dangerous activity was error as a matter of law. On cross-appeal, Perez argues the court erred in finding that the claim for products liability was barred by the statute of repose, A.R.S. § 12–551. We reverse and remand.

## FACTS

The undisputed facts are that Anne Perez's death at age 59 in 1991 resulted from mesothelioma, a form of cancer caused by exposure to asbestos. Mesothelioma has a latency period prior to clinically manifested symptoms of 25 to 40 years. Perez resided in the family home until her marriage in 1951; the disease was diagnosed in May 1989. Perez's father, Rafael Montenegro, worked for Southern Pacific Railroad in Tucson from 1923 to 1954. From 1931 to 1951, while working as a boilermaker, Montenegro was exposed to asbestos-containing insulation materials used in the repair and maintenance of steam locomotives.

During repair and maintenance, asbestos-containing insulation was removed and reinstalled in the back shop of Southern Pacific's Tucson rail yard. That process created a substantial amount of visible dust in the shop. Montenegro wore his work clothes home and hung them in the family's only bathroom prior to laundering. On occasion, Perez entered Southern Pacific's yard to deliver her father's lunch.

## APPEAL

*Strict Liability: Abnormally Dangerous Activity*

Southern Pacific argues that, as a matter of law, the trial court erred in eliminating a foreseeability requirement before imposing strict liability for abnormally dangerous activity.

We look to the Restatement (Second) of Torts §§ 519 and 520 (1965), as authority in imposing strict liability for abnormally dangerous activity. *Correa v. Curbey*, 124 Ariz. 480, 605 P.2d 458 (App.1979). Whether an activity is abnormally dangerous is not a fact question; such determinations are for the court. *Cordova v. Parrett*, 146 Ariz. 79, 82, 703 P.2d 1228, 1231 (App.1985); Restatement (Second) of Torts § 520 cmt. *l*.

The predicate finding appellant urges on this court is not articulated directly in the Restatement. Nor do we agree that such a finding is necessary. At issue is whether the activity of asbestos-containing insulation removal and reinstallation is abnormally dangerous as a matter of law. Questions of law are reviewed de novo. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966).

Strict liability for abnormally dangerous activities is a distinct legal theory. It is not a claim for strict products liability alleging that a product was in a defective condition and unreasonably dangerous. It is not a claim alleging that the defendant was engaged in inherently dangerous activities; such activities are not within a strict liability concept. Rather, they involve a negligence theory which defines such activities as inherently dangerous if they present foreseeable and significant risks of harm. *Good Fund Ltd.–1972 v. Church*, 540 F.Supp. 519 (D.Colo.1982), *rev'd on other grounds*, 703 F.2d 464 (10th Cir.1983).

The Restatement requires the court to conduct a case-by-case analysis before imposing strict liability. *State Dept. of Envi-*

*ron. Protect. v. Ventron,* 94 N.J. 473, 468 A.2d 150 (1983). In such an analysis properties of the particular substance involved are not determinative, rather the defendant's activity as a whole is analyzed. *Richmond, F. & P. R.R. Co. v. Davis Industries,* 787 F.Supp. 572 (E.D.Va.1992). Strict liability, then, attaches only to abnormally dangerous activities, not substances. *See Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.,* 916 F.2d 1174, 1181 (7th Cir.1990) ("ultra-hazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities").

In analyzing whether an activity is abnormally dangerous, the court must engage in a balancing test using the six factors set forth in Restatement (Second) of Torts § 520.[1] *Arlington Forest Associates v. Exxon Corp.,* 774 F.Supp. 387, 390 (E.D.Va.1991). The factors are interrelated and the court "should consider them as a whole, apportioning weight to each in accordance with the facts in evidence." *Id.*

Southern Pacific contends that liability under this theory is "strict" because it is imposed even when due care has been exercised, but it is not unlimited. We agree.

The essence of the rule of liability without fault is that if a person in the conduct or maintenance of an enterprise which is lawful and proper in itself deliberately does an act under known conditions and with knowledge that injury will in all probability result to another and injury is sustained by the other as the direct and proximate consequence of the act, the person doing the act and causing the injury is liable in damages even though he acted without negligence. Under the doctrine, liability rests not upon negligence but upon the intentional doing of that which the person knows or should in the exercise of ordinary care know may in the normal course of events reasonably cause loss to another. Liability is automatically imposed upon the tort feasor when damages are sustained by another under such circumstances, even though there was no negligence.

*Zampos v. United States Smelting, Refining & Mining Co.,* 206 F.2d 171, 176 (10th Cir. 1953). In discussing the extent of liability to be imposed under a claim of strict liability for abnormally dangerous activity, W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 79, at 559 (5th ed. 1984), states:

It is clear, first of all, that unless a statute requires it, strict liability will never be found unless the defendant is aware of the abnormally dangerous condition or activity, and has voluntarily engaged in or permitted it. Mere negligent failure to discover or prevent it is not enough....

In the present case, the court made extensive findings of fact and law. It imposed strict liability for abnormally dangerous activity, applying the "hindsight" test of *Dart v. Wiebe Manufacturing, Inc.,* 147 Ariz. 242, 709 P.2d 876 (1985). The court's minute entry acknowledged that *Dart* was a products liability case, but applied its "hindsight" test of imputed knowledge for public policy reasons. Although it is attractive to analogize to the risk/benefit factors analysis used in *Dart,* upon which the "hindsight" test is based, we believe it is no more than an attempt to bootstrap that argument onto a totally unrelated legal theory. Without authority to support such an argument, we decline to rule that the "hindsight" test is applicable to a claim for strict liability for abnormally dangerous activity.

In the present case, then, the determination of whether an activity is abnormally dangerous under Restatement § 520 must be related to the time at which Southern Pacific engaged in the activity being analyzed.

---

1. § 520. Abnormally Dangerous Activities.

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

The liability arises out of the abnormal danger of the activity itself, and the risk that it creates, of harm to those in the vicinity. It is founded upon a policy of law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against that harm when it does in fact occur. The defendant's enterprise, in other words, is required to pay its way by compensating for the harm it causes, because of its special, abnormal and dangerous character.

Restatement (Second) of Torts § 519 cmt. d.

We believe the court erred as a matter of law in applying the *Dart* hindsight test and therefore reverse and remand. Further proceedings must be based upon the Restatement test.

### CROSS–APPEAL

*Products Liability, Statute of Repose*

■ Perez argues that the court erred in applying A.R.S. § 12–551, the statute of repose, to bar the wrongful death claim for products liability when there was no evidence that the product was older than 12 years and that, in any case, A.R.S. § 12–551 is unconstitutional.

Our supreme court has very recently held that § 12–551 is unconstitutional. *Hazine v. Montgomery Elevator Co.*, 861 P.2d 625 (1993). Thus, Perez's right to sue on a products liability theory is no longer barred by the statute of repose.

Southern Pacific argues that even if the statute is unconstitutional and the action is not barred, there is no evidence that it was ever a manufacturer or a seller of a defective product that caused injury after being placed in the stream of commerce. We disagree.

A review of the record reveals that although there was some conflicting testimony regarding Southern Pacific's involvement in the design and manufacture of its steam locomotives, the court entered no factual findings on the issue. We will not weigh conflicting evidence on review; that is for the trier of fact. *Imperial Litho–Graphics v. M J Enterprises*, 152 Ariz. 68, 730 P.2d 245

(App.1986). We therefore reverse and remand on that issue as well.

LIVERMORE, P.J., and LACAGNINA, J., concur.