Frances M. SPLENDORIO, et al.

v.

**BILRAY DEMOLITION CO., INC. et al.**

**No. 94–696–Appeal.**

Supreme Court of Rhode Island.

Sept. 12, 1996.

John Marks, Wakefield, for Plaintiff.

Steven M. Richards, Anchorage, AK, Kristin Rodgers Sullivan, Peter J. McGinn, Providence, RI, for Defendant.

Before WEISBERGER, C.J., and MURRAY, LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on appeal after summary judgment and entry of final judgment in favor of Certified Engineering and Testing Co., Inc. (Certified), one of three named defendants in a pending Superior Court civil action for damages. Plaintiffs' claims against the remaining defendants are pending trial in the Superior Court.

## I

### Facts and Travel

On September 2, 1988, Certified entered into a contract with the Providence Housing Authority (PHA) whereby Certified was required to inspect for the presence of asbestos in three buildings located in a public-housing development, Hartford Park[1] that were scheduled for demolition. If asbestos was discovered, Certified was then required by its contract to develop a plan for the abatement of the asbestos and, after its removal, to certify its absence in the three buildings. Asbestos was found in the three buildings, and Certified thereafter developed an abatement plan. As part of that plan, the PHA contracted with D. Dixon Donovan Co. to remove the asbestos. After D. Dixon Donovan Co. removed the asbestos, Certified again inspected the three buildings, and determined from its examination that no asbestos remained. Certified then issued its certification. Shortly thereafter, the PHA contracted with Bilray Demolition Co., Inc. (Bilray), another of the defendants, to demolish the buildings. That demolition contract required Bilray to transport the debris from the demolition site. General Laws 1956 § 23–18.9–5 required Bilray to deliver the debris to a licensed solid waste facility. Bilray, however, in the course of its demolition work transported some of the debris from the buildings to its own wrecking yard, located in the town of Johnston, so that it could crush the debris and resell it as fill. That action was in clear violation of § 23–18.9–5.

In 1990, while the third and final building included in the contract between the PHA and Certified was being demolished by Bilray, Certified, during the course of an inspection being conducted pursuant to a different and separate contract with the PHA, discovered a thin coat of asbestos on some walls it was examining in some different buildings located in the Hartford Park housing development. Certified then decided to reexamine the debris from the three buildings demolished by Bilray, both at the demolition yard and at Bilray's wrecking yard in Johnston, to determine if any of that debris contained any similar thin coats of asbestos. A small amount of asbestos was in fact found. As a result, the debris at both sites was then moistened so as to prevent the dispersal of any asbestos fibers into the air, and the debris that had been transported to the Bilray wrecking yard was then removed to a special waste facility in Indiana. Its having

1. The three buildings were located at 375 Hartford Avenue, 12 Bodell Street, and 22 Whelan Road.

been placed at Bilray's wrecking yard in the first instance is the catalyst of this litigation.

Frances M. and Anthony J. Splendorio (the Splendorios) live in the vicinity of the Bilray wrecking yard in Johnston. They filed a civil action in the Superior Court against Bilray, Certified, and R & T Realty, Inc., the last being the owners of the property on which Bilray's wrecking yard is located. Although the Splendorios' complaint was filed as a class-action complaint, it has never been certified as a class action as required by Rule 23 of the Superior Court Rules of Civil Procedure.

In their complaint, the Splendorios allege, inter alia, that the value of their property has been diminished as a result of the defendants' actions. They contend that they must now disclose to any prospective buyers of their property the possible release of asbestos from Bilray's wrecking yard located in the vicinity of their property. Although the Splendorios have never attempted to market their property, they rely upon an affidavit from Robert Colieci (Colieci), a neighboring homeowner in the vicinity of the wrecking yard who is a licensed realtor, for proof of their diminution of property value claim. In his affidavit Colieci asserts that the potential release of asbestos from Bilray's wrecking yard site has reduced property values in the area and has dissuaded local homeowners from marketing their properties because of their fear of having to disclose to any prospective purchasers the possible presence of asbestos in or about their properties. He asserts further that the one house that was actually sold following the discovery of the asbestos at the Bilray wrecking yard was sold at a "25% reduction," from the seller's asking price, and that he "reasonably believe[s]" was attributed to the potential presence of asbestos in the neighborhood. That fact however was not disclosed prior to the

sale. Moreover, according to Colieci, the one other house that is listed for sale in the neighborhood of Bilray's wrecking yard has not sold for a full year, a condition that he again attributes to the asbestos fear situation. The Splendorios' claim for damages is based solely upon Colieci's affidavit.

In responding to the Splendorios' complaint, Certified, one of the three named defendants in the civil action, moved for summary judgment on counts 1 and 4 in the Splendorios' complaint. Those counts allege absolute liability and negligence on the part of all defendants, including Certified. The trial justice after hearing on Certified's summary judgment motion found that the Splendorios had no cause of action against Certified. He found, specifically, that Certified was not subject to absolute liability pursuant to *Rose v. Socony–Vacuum Corp.*, 54 R.I. 411, 173 A. 627 (1934). He also found that Certified could not be held liable on the negligence theory advanced by the Splendorios because Certified owed no legal duty to the Splendorios and that in order for a duty to exist, the risk of harm to the Splendorios had to be foreseeable to them. The trial justice concluded that the risk of any harm coming to the Splendorios' property from any actions taken by Certified from which any duty flowed to the plaintiffs was not foreseeable. We affirm the trial justice's decision.

In doing so, we note that the trial justice properly adhered to the rule of precedent in relying upon *Rose* and its rejection of absolute liability as espoused in *Rylands v. Fletcher*, L.R. 3 H.L. 330.[2]

Understandably, *Rose* is bound to resurface at center stage in the pending Superior Court trials of the remaining defendants. We deem it incumbent therefore at this time to provide guidance to the trial justice in that regard.[3]

---

**2.** Neither *Rose v. Socony–Vacuum Corp.*, 54 R.I. 411, 173 A. 627 (1934) nor *Rylands v. Fletcher*, L.R. 3 H.L. 330 used the terms "ultrahazardous activities" or "abnormally dangerous activities." Those terms were coined in the Restatement *Torts* §§ 519–20 (1938) and the Restatement (Second) *Torts* §§ 519–20 (1977), respectively. Although the theory was originally developed in *Rylands,* courts now use the same terms as the Restatements when discussing the absolute liabil-

ity theory. Coincidentally, counsel for Rose, William A. Needham, Esquire, who advocated the Restatement view happened to be the late uncle of the trial justice.

**3.** The *subsurface* considerations in *Rose* would logically be applicable to *above surface* situations such as are present in the instant pending Superior Court case.

Factually, *Rose* involved a claim for damages by Rose against a neighboring oil refinery arising from the refinery's contamination and pollution of subsurface waters under its land. The refinery's contaminated and polluted subsurface waters had seeped under an adjoining refinery roadway and then into the water supply on Rose's nearby land that was used by Rose not only for domestic purposes but also for his farm business that included a piggery and hennery. Despite proving contamination of his subsurface waters and that he had to obtain water from other sources for his domestic wants and that he had lost 136 hogs and 700 hens, and thereby the ability to continue at his farm business, this Supreme Court in 1934 disposed of his claim by stating:

"It will be observed that in jurisdictions, holding that even though there is no negligence there is liability for the pollution of subterranean waters, the predominating economic interest is agricultural.

"Defendant's refinery is located at the head of Narragansett Bay, a natural waterway for commerce. This plant is situated in the heart of a region highly developed industrially. Here it prepares for use and distributes a product which has become one of the prime necessities of modern life. It is an unavoidable incident of the growth of population and its segregation in restricted areas that individual rights recognized in a sparsely settled State have to be surrendered for the benefit of the community as it develops and expands. If, in the process of refining petroleum, injury is occasioned to those in the vicinity, not through negligence or lack of skill or the invasion of a recognized legal right, but by the contamination of percolating waters whose courses are not known, we think that public policy justifies a determination that such injury is *damnum absque injuria*." *Rose,* 54 R.I. at 421, 173 A. at 631–32.[4]

We believe that *Rose* has succumbed to "the inaudible and noiseless foot of Time."[5] The pull of past precedent, should not propel us into creating small distinctions in an effort to follow precedent, and in the end, result in perverting the once intended and true meaning of that precedent. As Justice Holmes observed in his treatise, "precedents should be overruled when they become inconsistent with present conditions." Oliver Wendell Holmes, Jr., *The Common Law* 126 (1881). *Rose* is today inconsistent with present conditions. It has served us long and well, and we lay it now to final rest, holding its teachings no longer applicable in our law. Its demise does not, however, assist the plaintiffs. Under any theory of absolute liability for ultrahazardous or abnormally dangerous activities, Certified could not be found liable to the plaintiffs under the particular facts present in this case. Those facts mandate affirmance of the trial justice's grant of summary judgment under either *Rose* or the application of an absolute liability theory.

**II**

**The Absolute Liability Count**

In reviewing the grant of a summary judgment motion, this Court employs the same standard on review as the trial justice. We must examine all of the pleadings, memoranda and affidavits in the "light most favorable to the party opposing the motion." *Rustigian v. Celona,* 478 A.2d 187, 190 (R.I. 1984). *See also Boland v. Town of Tiverton,* 670 A.2d 1245, 1248 (R.I.1996).

The question of whether a defendant should be held strictly liable for ultrahazardous or abnormally dangerous activities is a question of law. *Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.,* 916 F.2d 1174 (7th Cir.1990); *Perez v. Southern Pacific Transportation Co.,* 180 Ariz. 187, 883 P.2d 424 (1993). Absolute liability attaches only to ultrahazardous or abnormal-

---

**4.** That discreet Latin phrase or legalese coup de grâce simply means that Rose's losses did not give rise to an action for damages against the oil refinery that had killed his livestock and contaminated and polluted his farm water supply. Apparently by rejecting his claim in sophisticated Latin, the Court may have assumed that Rose would not really understand why he lost his case and losing would then not be so painful to him.

**5.** William Shakespeare, *All's Well That Ends Well,* act V, sc. 3.

ly dangerous *activities* and not to ultrahazardous or abnormally dangerous *materials*. *G.J. Leasing Co. v. Union Electric Co.*, 854 F.Supp. 539, 567–69 (S.D.Ill.1994). *See also Perez*, 180 Ariz. at 189, 883 P.2d at 426 ("[i]n such an analysis properties of the particular substance are not determinative, rather the defendant's activity as a whole is analyzed"). "[I]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." *G.J. Leasing Co.*, 854 F.Supp. at 568 (quoting *City of Bloomington, Ind. v. Westinghouse Electric Corp.*, 891 F.2d 611, 615–17 (7th Cir.1989)).

■ Although asbestos is understandably an ultrahazardous or abnormally dangerous material, Certified's activities in this case were not ultrahazardous or abnormally dangerous. An analysis of whether an activity is ultrahazardous or abnormally dangerous requires a consideration of the following factors, as set forth in the Restatement (Second) *Torts* § 520 (1977):

"(a) existence of high degree of risk of some harm to the person, land or chattels of others;

"(b) likelihood that the harm that results from it will be great;

"(c) inability to eliminate the risk by the exercise of reasonable care;

"(d) extent to which the activity is not a matter of common usage;

"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighed by its dangerous attributes."

■ Those factors are to be viewed as a whole and the weight apportioned to each should be dependent upon the facts in each particular case. *Perez*, 180 Ariz. at 188–89, 883 P.2d at 426. In this appeal, while we recognize that great harm might result from ingestion of asbestos fibers, the risk thereof resulting from Certified's limited activities, leaves that probability on the facts here, most improbable because its activities were in fact carried out safely and with the exercise of reasonable care. "[A]n activity is not abnormally dangerous if the risks therefrom could be limited by the exercise of reasonable care." *G.J. Leasing Co.*, 854 F.Supp. at 568. *Cf. Ganton Technologies, Inc. v. Quadion Corp.*, 834 F.Supp. 1018, 1020 (N.D.Ill.E.D. 1993)("clean up of PCB's from an industrial site is not an abnormally dangerous activity that warrants the application of strict liability"). Certified's activities in this case were appropriate because in the demolition of buildings possibly containing asbestos it is necessary prior to demolition to inspect for asbestos in order to reduce potential health risks. Nothing required to be performed by Certified created or gave rise to the conditions complained of by the Splendorios. It was Bilray's unanticipated and unlawful actions that created the conditions complained of by them. Finally, and perhaps most importantly, the value to the community of Certified's activities far outweighed its dangerous attributes. "[C]leanup operations serve the valuable and essential social function of *reducing* the danger" of potentially harmful substances such as asbestos. *Id.* at 1021. Therefore, public policy, as well as the other factors listed in Restatement (Second) *Torts* § 520, support our conclusion that Certified could not on the facts present in this case be held strictly liable for its activities. Accordingly, Certified is not liable under the theory of strict liability to the Splendorios and the grant of Certified's motion for summary judgment was proper.

### III

### The Negligence Count

■ Before there could be any finding of negligence made against Certified, the Splendorios were first required to establish that (a) Certified owed them a legal duty to refrain from negligent activities; (b) that there was a breach of that duty; (c) that the breach proximately caused the Splendorios' injury; and (d) that there was actual loss or damage resulting. *See Jenard v. Halpin*, 567 A.2d 368, 370 (R.I.1989). The linchpin in determining the existence of any duty owed to the Splendorios was the foreseeability of the risk of injury to them by Certified's actions. *See Banks v. Bowen's Landing*

*Corp.,* 522 A.2d 1222, 1225 (R.I.1987). "The 'risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others *within the range of apprehension * * *.'* " *Builders Specialty Co. v. Goulet,* 639 A.2d 59, 60 (R.I.1994)(quoting *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928)).

 It is clear that Certified did not owe the Splendorios any duty. Its contractual obligation from which any duty emanated was to the PHA. Certified could not foresee any risk flowing to the Splendorios because it was not reasonably foreseeable that Bilray would transport any of the demolition debris to its wrecking yard in Johnston, contrary to the terms of its contract with PHA, and to the dictates of the law, and thereby create a risk to the Splendorios. Pursuant to § 23–18.9–5, Bilray was required to deposit the demolition solid waste debris at a licensed solid waste facility. Bilray did not, however, obey that law. Certified cannot be held responsible for its not predicting and anticipating Bilray's breach of contract and illegal actions. Therefore, we are satisfied on the facts in this case that Certified did not owe any duty to the Splendorios, who were clearly outside the zone of any foreseeable danger created by Certified's activities under its contract with the PHA. In addition to the Splendorios' failure to establish any legal duty owed to them by Certified, the Splendorios have also failed to demonstrate any proximate cause between Certified's inspection actions and the Splendorios' alleged damages. Ordinarily the determination of proximate cause and, consequently, the existence of any superseding cause is a question of fact that should not be decided by summary judgment. However, one resisting summary judgment must assert "sufficient facts to satisfy the necessary elements of his [or her] negligence claim" and if a "plaintiff fails to present evidence identifying defendants' negligence as the proximate cause of his [or her] injury or from which a reasonable inference of proximate cause may be drawn," then summary judgment becomes proper. *Russian v. Life–Cap Tire Services, Inc.,* 608 A.2d 1145, 1147 (R.I.1992). On the record before us, there were insufficient facts alleged and presented to the trial justice to establish proximate cause between the inspection and certification activities of Certified and the alleged harm and damages to the Splendorios. The facts presented did not permit even an inference of proximate cause. The record demonstrates that it was Bilray's unforeseeable and illegal superseding act of depositing the demolition materials at its company wrecking yard that proximately caused the Splendorios' alleged harm and damages, thereby cutting off Certified's liability. Since Certified owed no legal duty to the Splendorios and because there was an insufficient showing of proximate cause between Certified's activities and the Splendorios' alleged harm and damages, summary judgment was properly granted in favor of Certified.

In addition to the Splendorios' failure to demonstrate the existence of any legal duty owed to them by Certified or a showing that their alleged damages were the proximate result of Certified's actions, it appears also questionable whether the Splendorios have demonstrated any actual loss or damages that would be sufficient to support any finding of negligence. However, in light of our above conclusions on the issues of legal duty and proximate causation, we need not address the issue of the Splendorios' alleged damages.

Accordingly, the summary judgment is affirmed, the Splendorios' appeal is denied and dismissed, and the papers of this case are remanded to the Superior Court.