NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PETER LEBEAU, et al., *Plaintiffs/Appellants*,

*v.*

TOM TALBOTT, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0624
FILED 6-6-2023

Appeal from the Superior Court in Maricopa County
Nos.  CV2017-010930
CV2017-050130
CV2018-005539
The Honorable Theodore Campagnolo, Judge (Retired)

**AFFIRMED**

COUNSEL

Insurance Defense Law Group, L.L.C., Scottsdale
By Joseph P. Rocco, Jason S. Carr
*Counsel for Plaintiffs/Appellants*

Jones Skelton & Hochuli P.L.C., Phoenix
By Ryan J. McCarthy, Jonathan P. Barnes
*Counsel for Defendant/Appellee, Constitution Week*

Grasso Law Firm P.C., Chandler
By Robert Grasso Jr.
*Co-Counsel for Defendant/Appellee, Town of Gilbert*

Elardo, Bragg, Rossi & Paulumbo P.C., Phoenix
By Venessa J. Bragg
*Co-Counsel for Defendant/Appellee, Town of Gilbert*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

_____

**B R O W N**, Judge:

¶1        The Town of Gilbert ("Town") issued a special event permit to Constitution Week USA ("CW") for an event on Town property. CW then contracted with Arizona Skyhawks, an Arizona limited liability company ("Skyhawks"), to perform an evening skydiving demonstration with fireworks as part of the event. When the initial fireworks were ignited, Skyhawks' plane caught fire and crashed into the home of Peter and Sharon Lebeau ("the Lebeaus"). The Lebeaus sued various parties, including CW and the Town. The superior court granted summary judgment in favor of CW and the Town. The Lebeaus challenge that ruling on appeal. For the following reasons, we affirm.

**BACKGROUND**

¶2        CW is a private entity that organized, sponsored, and promoted an annual event celebrating the signing of the United States Constitution known as the Constitution Week Fair ("Fair"). Before the 2016 Fair, the skydiving demonstration contract was signed by Barbara Stowell ("Stowell") on behalf of CW, and by Tom Talbott ("Talbott"), on behalf of Skyhawks. According to Talbott, CW specifically hired his company because it used "pyrotechnics" as part of its air show.

¶3        Skyhawks submitted a form requesting authorization for the flight with the Federal Aviation Administration ("FAA"). The FAA approved the application and issued a certificate of authorization for "Parachute Operations Over or Into a Congested Area or Open-Air

2

Assembly of Persons." Skyhawks' application did not disclose that it intended to use pyrotechnics during the flight.

**¶4** Shortly before the airshow, Skyhawks attached a homemade metal pyrotechnic box ("Gerb Box") to the plane's left "main landing gear step" by using "three bolts and nuts." *See Gerb*, Merriam-Webster, https://www.merriam-webster.com/dictionary/gerb ("a firework throwing a shower of sparks"). Skyhawks then placed two gerbs inside the box. Although the parties debate whether the gerbs constitute "fireworks" in a legal context, the precise label is irrelevant for resolving the issues in this appeal. A trigger device was located just behind the pilot's seat, which when activated would relay an electrical signal through a wire to the Gerb Box and ignite the gerb. Here, before the trigger was activated and just as the skydivers were preparing to jump, the first gerb ignited and caused a fire that quickly spread throughout the plane. The skydivers were able to exit, along with the pilot, but the plane crashed into the Lebeaus' home.

**¶5** The Lebeaus filed suit against various entities and individuals, including CW, Skyhawks, and the Town. After extensive discovery, the Town moved for summary judgment on all claims against it, but specifically focused on the Lebeaus' strict liability and negligence claims. CW then moved for summary judgment on the claims of vicarious liability, joint liability, and all other claims. The superior court granted both motions and entered judgment under Arizona Rule of Civil Procedure 54(b). The Lebeaus timely appealed and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶6** Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We review the entry of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party." *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373, ¶ 13 (2021). We also review de novo other issues of law, including the existence of a duty. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564, ¶ 7 (2018).

### A. Duty—Town of Gilbert

**¶7** As a threshold issue, a plaintiff pursuing a claim for negligence bears the burden of establishing a legal duty. *Id.* at 563–64, ¶ 7. To prevail on their negligence claim against the Town, the Lebeaus must first establish that the Town owed them a duty "to conform to a particular

standard of conduct to protect [them] against unreasonable risks of harm." *Dinsmoor*, 251 Ariz. at 373, ¶ 14. We do not consider foreseeability when analyzing whether a duty exists. *Quiroz*, 243 Ariz. at 564, ¶ 11. Generally, when no special relationship exists, whether a duty exists "is a legal matter to be determined *before* the case-specific facts are considered." *Dinsmoor*, 251 Ariz. at 376, ¶ 26 (clarifying that the cautionary statement against considering the specific facts of the case applies "when a special relationship [is] absent").

**¶8**      Duties are based on "special relationships" or on other relationships formed by public policy. *Quiroz*, 243 Ariz. at 565, ¶ 14. "Special relationships include those recognized at common law and those formed by contracts, joint undertakings, and family relationships." *Dinsmoor*, 251 Ariz. at 373, ¶ 14. For other relationships, public policy creating a duty may be based on statutes, or on the common law, such as a section of the Restatement. *See Quiroz*, 243 Ariz. at 565, ¶ 15. A statute may create a duty when a plaintiff "is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against." *Id.* (citation omitted). Although not clearly stated, the Lebeaus appear to rely on three grounds for establishing a duty based on public policy: (1) Town ordinances and a special events manual, (2) voluntary undertaking, and (3) a general non-delegable duty.

**¶9**      Before addressing those grounds, we must analyze the scope of the alleged duty. The Lebeaus broadly assert the Town owed them "a common law duty of due care to investigate, evaluate, control, supervise and only allow and permit such an ultrahazardous event . . . that [is] safe and [does] not endanger property, citizens, and the public." In support of those assertions, the Lebeaus point to many facts in the record to justify imposing a legal duty on the Town. Indeed, the Lebeaus' framing and analysis of the duty issue focuses almost entirely on those case-specific facts, which is improper because no special relationship exists in the context of this case. *See id.* at ¶ 13. Instead, we frame the issue as whether a municipality that issues a special event permit owes a duty of care to protect the general public from risks of harm created by a third party that contracts with the event organizer to provide services for the event.

**¶10**      The Lebeaus argue the Town's ordinances, as well as less formal documents, create a duty. The Lebeaus reference several Town Code Provisions as well as an "event planning guide" that addresses guidelines for approving special events and fireworks displays. But the Lebeaus do not address their obligation to show they are "within the class of persons to be protected" by those ordinances or the planning guide, or

that the airplane crashing into their home is the risk that the ordinances "sought to protect against." *See id.* at ¶ 15. The Lebeaus' argument fails for that reason alone. Also, they cite no authority suggesting a municipal regulatory ordinance, or a guide prepared by municipal staff, creates a duty of care to protect the general public from harm as a result of issuing a special event permit to the entity organizing the event.

¶11 The Lebeaus summarily assert the Town assumed the duty to protect them from harm based on Restatement 323 (Duty to Aid Others and Services Gratuitously Rendered or Undertaken). However, nothing in their briefing shows, and our review has not revealed, that this argument was presented to the superior court. It is therefore waived. *See Odom v. Farmers Ins. Co. of Arizona*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("Generally, arguments raised for the first time on appeal are untimely and deemed waived.").

¶12 The Lebeaus also suggest the Town has a non-delegable duty of care to all of its residents or visitors. In support, they cite cases relating to traffic signals and safe streets. *See, e.g., Wiggs v. City of Phoenix*, 198 Ariz. 367 (2000). A non-delegable duty for proper maintenance of streets and traffic signals makes sense because the Town controls that infrastructure. But the Lebeaus essentially seek to impose a duty of care on the Town to protect every person who lives in or is present in the Town from any harm resulting from mere issuance of a special event permit. Doing so would improperly make the Town "'general insurers' for the safety of all citizens." *Hogue v. City of Phoenix*, 240 Ariz. 277, 281, ¶ 13 (App. 2016).

¶13 The Town owed no duty of care to the Lebeaus because there is no special relationship between them. Public policy does not support imposing a duty on a municipality to control the actions of an independent contractor who performs services for the organizer of a special event. *Cf. Ritchie v. Costello,* 238 Ariz. 51, 55, ¶ 14 (App. 2015) ("[E]xposing event organizers to that kind of liability would have a chilling effect on municipal-sponsored social gatherings—a result that we have deemed contrary to public policy."). Given this conclusion, we do not address the Town's argument that it was entitled to summary judgment based on federal preemption because the Town "had no authority or jurisdiction to determine the airworthiness" of the airplane used by Skyhawks.

**B.      Vicarious Liability**

**1.      Constitution Week**

**¶14**          Generally, a principal is not vicariously liable for the negligence of an independent contractor.  *See S. A. Gerrard Co. v. Fricker*, 42 Ariz. 503, 506 (1933).  This rule is "premised both on a notion of fairness and on a policy theory of risk allocation." *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 100 (1990).  Liability is limited because it would be unjust to hold an employer liable for the tortious acts of a contractor over which there was no control.  *Id.*

**¶15**          Nonetheless, a court may impose vicarious liability when the independent contractor is hired to perform inherently dangerous work or work involving a special danger.  *Fricker,* 42 Ariz. at 507; Restatement (Second) of Torts § 427.  The risk must be "recognizable in advance[,]" "inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer has special reason to contemplate such a risk . . . ." *Id.* § 247 cmt. b.  In deciding whether an activity is inherently dangerous, the court considers if the exercise of reasonable care can eliminate the risk of harm and if that risk is "to the person, land or chattels of another."  *Pride of San Juan, Inc. v. Pratt*, 221 Ariz. 337, 340, ¶ 11 (App. 2009).  "[W]hether an activity is inherently dangerous depends on the facts of each case."  *Id.* at ¶ 13.  An activity is inherently dangerous if the risk involved is recognizable in advance and inherent in the work, or the risk is one that is normally expected in carrying out the task at hand.  *Id.* at ¶ 11.

**¶16**          It is undisputed that Skyhawks was hired as an independent contractor, and the Lebeaus do not identify any evidence in the record showing that CW retained any control over how Skyhawks fulfilled its contractual responsibility of performing at the Fair.  Nor does the record show that CW possessed any expertise or knowledge needed to perform the work Skyhawks was hired to do.  Thus, for the Lebeaus' vicarious liability claim to survive, the work involved needed to be "inherently dangerous." *Fricker*, 42 Ariz. at 507.  CW asserts that the relevant activity for analyzing inherent dangerousness was the implementation and use of the Gerb Box, but the Lebeaus contend the analysis must focus on the entire airshow.

**¶17**          It is undisputed that Skyhawks was hired to perform a pyrotechnic aerial show.  Although skydiving itself may not be an inherently dangerous activity, *see Lowry v. Cochran*, 305 Ga. App. 240, 243

(2010), the attachment of the Gerb Box to the plane to store the gerbs until their ignition significantly affected the dangerousness of the activity. Given the potential interaction of airplane fuel and fireworks, we agree that the storage and ignition of gerbs in a box bolted to the surface of an airplane is inherently dangerous, at least for purposes of analyzing the summary judgment motion. Although the Lebeaus assert we must examine this issue on the assumption that the entire airshow was inherently dangerous, their arguments and the evidence they point to are focused only on the extent to which CW knew or should have known that the airshow would involve use of the Gerb Box. Given that narrow focus, and because the faulty gerb in the Gerb Box caused the fire, the relevant activity for this analysis is Skyhawks' use of the Gerb Box, as opposed to the entire airshow.

¶18        Besides establishing that the work involves an inherently dangerous activity, the principal must know or have reason to know that the danger is "inherent in or normal to the work" or that it is contemplated when making the contract. Restatement (Second) of Torts § 427. An actor has "reason to know" if he knows facts from which a reasonable person "of ordinary intelligence . . . would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist." *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 143, ¶ 29 (App. 2011) (citation omitted). The "reason to know" standard differs from the "should know" standard because it carries no implied "duty of ascertaining the fact in question." Restatement (Second) of Torts § 12 cmt. a. In contrast, "should know" implies that the actor has a duty to use "reasonable diligence" to ascertain the fact in question. *Id*.

¶19        Concluding that CW did not know or have reason to know Skyhawks was engaged in an inherently dangerous activity, the superior court found that "CW had no knowledge and was not informed by anyone on the skydiving team that the airplane contained [the Gerb Box]." The Lebeaus argue the court "improperly determined issues of fact and improperly weighed evidence when it determined that CW could not be vicariously liable" for Skyhawks' acts and omissions.

¶20        Viewing the facts in the light most favorable to the Lebeaus, no genuine disputes of material fact support their argument that CW knew or had reason to know about the Gerb Box. Talbott testified that CW knew Skyhawks used pyrotechnics as part of its routine and that, in his opinion, this was part of the reason Skyhawks was hired. Talbott also testified that he informed Barbara Stowell of CW that Skyhawks "now had a new part of our show where you can see the plane coming from a further distance. It

looks like a meteor coming through the sky. . . it's pretty cool." According to Talbott, Stowell replied "Cool. Sounds great."

¶21      The Lebeaus then point to several isolated portions of Stowell's deposition testimony. When asked about the trail of light that would come from the plane, and what would most likely be the cause, she responded:

> I guess it would have been a gerb, a firework, or a sparkler. And they—as soon as they jumped out of the plane, they turned it on. Whether they took a match and lit it or pulled a cord or turned a flashlight on it, I don't know. I wasn't up there.

Stowell also clarified that she did not know what was emitting the light nor that it would be on the airplane itself. During her deposition, she was shown a video of a night parachute jump performed by Skyhawks at a balloon festival that occurred around 2010. When asked to compare the video with what she had seen at CW events, she testified that they were similar but that the light from the skydivers was not so pronounced as in the video.

¶22      The Lebeaus argue these pieces of evidence taken together show that Stowell and CW had reason to know that fireworks would be discharged from the Gerb Box. As noted, the "reason to know" standard does not impute a duty of investigation to the actor; instead, the actor is presumed to be "reasonable" and have "ordinary intelligence" and knowledge. Restatement (Second) of Torts § 12 cmt. a. The evidence described above does not show that Stowell had reason to know about the fireworks being discharged from the plane's exterior surface. None of the evidence the Lebeaus cite confirms that Stowell was aware, and much less understood, that the fireworks would be emanating from a metal box physically attached to the airplane. A reasonable person of ordinary intelligence would not assume that an analogy to a meteor means that the fireworks would be discharged directly from a box bolted to the surface of the plane rather than by the parachutists after exiting the plane. No genuine dispute exists that Stowell neither knew nor had reason to know of the placement or proposed use of the Gerb Box.

¶23      CW relies heavily on Stowell's testimony during which she was asked to opine about what mechanism on the plane emitted the light that trailed the plane. Read in context, her full answer confirms she did not know what was on the airplane and was merely listing possibilities.

Moreover, even if she reasonably concluded that the fireworks originated from the Gerb Box based on the events she witnessed from the ground just before the plane crash, that does not show she had any awareness of the box before the event. The only pertinent fact she was told beforehand was that the display would look like a meteor.

¶24 The Lebeaus contend that because Stowell had seen Skyhawks' air show before, she should have had reason to know about the Gerb Box. The record does not support the Lebeaus' contention. Talbott testified that although Skyhawks had used a Gerb Box for other shows, the first time it was done for CW was at the 2016 Fair. Indeed, Talbott explained that before the "industry" started using the Gerb Box concept, performers used a variety of other ways to emit sparkler-type lights from the airplane, including using road flares, or placing "a variety of things on a broomstick and stick[ing] it out of the door to set it off." By attaching the Gerb Box to the airplane, Skyhawks created a new risk that was not reasonably contemplated by CW, so vicarious liability does not apply. *See* Restatement (Second) of Torts § 427 cmt. d (inherently dangerous activity rule does not apply when the contractor's negligence "creates a new risk, not inherent in the work itself . . . and not reasonably to be contemplated by the employer").

¶25 Assuming that Stowell had reason to know about the planned use of the Gerb Box, CW would have been obligated to take "reasonable precautions against such danger." Restatement (Second) Torts § 427. CW required Skyhawks to have demonstration jump insurance. CW could have asked Skyhawks for the FAA certificate of authorization, but even if it had done so the fireworks were not listed on the certificate nor was there any form of FAA approval of the Gerb Box. It would have been reasonable for CW, as the event organizer, to expect to rely on the authorization form from the FAA and the expertise of Skyhawks as to all aspects of its flight, pyrotechnics, and parachuting demonstration. Thus, although the use of the Gerb Box was an inherently dangerous activity, no genuine issues of material fact show that CW had reason to know the box existed. CW is not vicariously liable to the Lebeaus.

¶26 We also reject the Lebeaus' assertion that the summary judgment ruling in favor of CW did not dispose of all claims against it. Although the motion specifically focused on vicarious liability, CW asked for judgment on all claims.

### 2.     The Town

¶27        The superior court found that the Town was not, as a matter of law, vicariously liable for Skyhawks' negligence.  Among other things, the court explained that "the Town was not the sponsor or organizer of the Constitution Week USA event, and cannot be considered as a party to the contract" between CW and Skyhawks.

¶28        The Lebeaus assert that "cities have a non-delegable duty to maintain safe streets and are in fact vicarious[ly] liable for the negligence or fault of their employees, agents, and subcontractors." *See Wiggs*, 198 Ariz. at 369–70, ¶ 8.  But the Town issued a special event permit to CW, which in turn contracted with Skyhawks.  There was no contract between the Town and Skyhawks for this event, and the Lebeaus have not shown that CW or Skyhawks were employees, agents, or subcontractors of the Town.  As a matter of law, the Town cannot be found vicariously liable for Skyhawks' actions or omissions.

### C.     Strict Liability

¶29        Under Arizona law, "strict liability will never be found unless the defendant is aware of the abnormally dangerous condition or activity, and has voluntarily engaged in or permitted it.  Mere negligent failure to discover or prevent it is not enough . . . ." *Perez v. Southern Pacific Transp. Co.*, 180 Ariz. 187, 189 (App. 1993) (citation omitted).

¶30        Strict liability and vicarious liability are distinct theories.  *Id.* at 188.  Whether something is abnormally dangerous "is not a fact question; such determinations are for the court."  *Id.*  To make this determination, a court considers six factors: (a) high degree of risk of harm to person, land, or chattels; (b) likelihood of resulting harm; (c) inability to eliminate the risk by using reasonable care; (d) whether the activity is a matter of common usage; (e) inappropriateness of the activity to where it is carried out; and (f) the extent to which the activity's community value is outweighed by dangerous attributes.  *See* Restatement (Second of Torts) § 520.

¶31        The superior court explained that it could not determine, on the record before it, whether Skyhawks conducted an abnormally dangerous activity.  Nonetheless, the court concluded that neither CW nor the Town could be held strictly liable, because neither had notice that Skyhawks was "flying in an abnormally dangerous condition or activity." We agree. Given our conclusion above that neither CW nor the Town knew or had reason to know about the existence or planned use of the Gerb Box, it follows that neither party was aware of, engaged in, or permitted an

"abnormally dangerous condition or activity." *Perez*, 180 Ariz. at 189. Thus, even assuming the activity was abnormally dangerous, the strict liability claim fails for lack of notice.

**CONCLUSION**

¶32    We affirm the superior court's grant of summary judgment.

