**Albert L. GRAY, Administrator, et al., Plaintiffs,**

**v.**

**Jeffrey DERDERIAN, et al., Defendants.**

**Estate of Jude B. Henault, et al., Plaintiffs,**

**v.**

**American Foam Corporation; et al., Defendants.**

**C.A. Nos. 04–312L, 03–483L.**

United States District Court, D. Rhode Island.

May 24, 2005.

---

Patrick T. Jones, Cooley Manion Jones LLP, Boston, MA, Max Wistow, Wistow & Barylick Incorporated, Mark S. Mandell, Mandell, Schwartz & Boisclair, Stephen E. Breggia, Esq., Breggia, Bowen & Grande, Eva Marie Mancuso, Hamel, Waxler, Allen & Collins, Steven A. Minicucci, Esq., Calvin Law Associates, Charles N. Redihan, Jr., Esq., Kiernan, Plunkett & Redihan, Providence, RI, Michael A. St. ·Pierre, Esq., Revens, Revens & St. Pierre, Warwick, RI, Brian R. Cunha, Brian Cunha & Assoc., East Providence, RI, Ronald J. Resmini, Esq., Ronald J. Creamer, Providence, RI, Robert R. Reardon, Esq., Robert I. Rimmer, Esq., The Reardon Law Firm, P.C., Ralph J. Monaco, Esq., Conway & Londregan, Daniel J. Horgan, Horgan Law Offices, New London, CT, for Plaintiffs.

Anthony F. DeMarco, Esq., Reynolds, DeMarco & Boland, Ltd., Fred A. Kelly, Jr., Steven M. Richard, Esq., Randall L. Souza, Ian C. Ridlon, Nixon Peabody LLP, Donald J. Maroney, James H. Reilly, III, Kelly, Kelleher, Reilly & Simpson, Joseph V. Cavanagh, Jr., Kristin E. Rodgers, Blish & Cavanagh, Howard A. Merten, Esq., Partridge, Snow & Hahn LLP, Eric M. Sommers, Benjamin V. White, III., Esq., Vetter & White, Incorporated, Stephen J. Macgillivray, Esq., Edwards & Angell, James R. Lee, Attorney General's Office, Richard W. MacAdams, MacAdams & Wieck, Inc., Ronald P. Langlois, Esq., Smith & Brink, P.C., Mark T. Nugent, Esq., Morrison Mahoney LLP, Thomas W. Lyons, III, Strauss, Factor & Lopes, Gerald C. DeMaria, Higgins, Cavanagh & Cooney, Mark C. Hadden, Esq., John R. Mahoney, Asquith, Mahoney & Robinson, Mark P. Dolan, Gregory L. Boyer, Esq., Michael R. DeLuca, Esq., Gidley, Sarli & Marusak, LLP, T. Dos Urbanski, Melick, Porter & Shea LLP, Thomas C. Angelone, Hodosh, Spinella & Angelone, Anthony R. Leone, Rice Dolan & Kershaw, Providence, RI, Christopher C. Fallon, Jr., Esq., Cozen O'Connor, Philadelphia, PA, Edwin F. McPherson, Esq., McPherson & Kalmansohn, Los Angeles, CA, Edward M. Crane, Esq., Deborah G. Solmor, Esq., Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, W. Thomas McGough, Jr., Esq., James J. Restivo, Esq., Reed Smith LLP, Pittsburg, PA, Andrew J. Trevelise, Esq., Reed Smith LLP, Philadelphia, PA, Charles L. Babcock, Esq., Nancy W. Hamilton, Earl H. Walker, Esq., Jackson Walker L.L.P., Houston, TX, Curtis R. Diedrich, Esq., Sloane & Walsh, Mark D. Cahill, Esq., Eric Bradford Hermanson, Choate, Hall & Stewart, Michael J. Mazurczak, Esq., Allen J. McCarthy, Melick, Porter & Shea, LLP, Edward T. Hinchey, Esq., Sloane & Walsh, LLP, Boston, MA, George Wolf, Ann M. Songer, Shook, Hardy & Bacon, Kansas City, MO, C. Russell Bengtson, Carroll, Kelly & Murphy, Georgia Sullivan, Mathis & Associates, Gerald P. Dwyer, Jr., Robinson & Cole, William E. Murray, Edwards & Angell, Allan B. Taylor, Day, Berry & Howard, Mark K. Ostrowski, Esq., Shipman & Goodwin, LLP, Jose M. Rojas, Shipman & Goodwin, Hartford, CT, Stephen Fogerty, Halloran & Sage LLP, Westport, CT, Joseph J. McGair, Esq., Patrarca & McGair, Warwick, RI, Michael T. Ryan, Ryan, Ryan, Johnson & DeLuca, Stamford, CT, Lauren DiSimone Wilkins, Carla Ottaviano, Law Office of George J. DuBorg, Glastonbury, CT, Matthew F. Medeiros, Esq., Little, Medeiros, Kinder, Bulman & Whitney,

Providence, RI, Jessica L. Margolis, Michael R. Potenza, Esq., Bruce P. Keller, Esq., Debevoise & Plimpton, LLP, New York City, Edward B. O'Connell, Jr. Waller, Smith & Palmer, P.C., New London, CT, Donna M. Lamontagne, Zizik, Powers, O'Connell, Spaulding & Lamontagne, P.C., Faith A. LaSalle, Esq., Law Offices of Faith A. LaSalle, Providence, RI, for Defendants.

Peter J. Schneider, Cooley Manion Jones LLP, Boston, MA, for Movant.

Stephen A. Izzi, Holland & Knight LLP, Providence, RI, for Interested Party.

Stephen M. Prignano, Edwards & Angell, Stephen B. Lang, Higgins, Cavanagh & Cooney, Providence, RI, for Third–Party Defendant/Defendants.

Donald M. Gregory, III North Kingstown, RI, for Cross–Claimant/Defendants.

Howard Julian, Saunderstown, RI, pro se.

James T. Murphy, Esq., Kelly N. Michels, Esq., Hanson Curran LLP, Marc Desisto, Desisto Law, Providence, RI, for Cross–Defendants/Defendants.

In Re Motion to Dismiss of Defendants TVL Broadcasting, Inc., and STL Broadcasting, Inc.

### DECISION AND ORDER

LAGUEUX, Senior District Judge.

On February 20, 2003, a deadly fire destroyed a nightclub in West Warwick, Rhode Island, known as The Station. The fire started as the featured rock band, Great White, began its live performance and the club was crowded with spectators, staff and performers. The opening featured stage fireworks, ignited by the band's tour manager, as the band took the stage.

According to eyewitnesses, the fireworks created sparks behind the stage which ignited polyurethane foam insulation on the club's ceiling and walls. In minutes, the entire building was on fire and over 400 people[1] were struggling to escape the crowded, dark and smoky space. The final toll: One hundred people dead and over 200 injured.

■ Numerous lawsuits, both criminal and civil, were filed throughout southern New England in both state and federal courts. Last year, in *Passa v. Derderian*, 308 F.Supp.2d 43 (D.R.I.2004), this Court asserted jurisdiction over several of the civil cases that had been removed to this Court from Rhode Island Superior Court, and asserted jurisdiction as well over the cases that had originally been filed in this Court. This Court's exercise of original federal jurisdiction was based upon the Multiparty, Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369. Since that time, to the best of this Court's knowledge, all civil lawsuits resulting from the nightclub fire have been consolidated in this Court, pursuant to a First Amended Master Complaint (hereinafter "the Complaint") filed and adopted jointly by about 250 plaintiffs, against over 50 defendants. Although this Court's jurisdiction relies upon federal law, Rhode Island provides the substantive law for these cases. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ticketmaster–New York v. Alioto*, 26 F.3d 201, 204 (1st Cir.1994); *Passa v. Derderian*, 308 F.Supp.2d 43 (D.R.I.2004). As of this writing, discovery has been stayed to per-

---

1. For detailed accounts of the tragedy, see Karen Lee Ziner, *Many Feared Dead, Scores Hurt When Fire Hits W. Warwick Club—Witnesses: Fireworks From Show Set Blaze*, Prov-idence J.-Bull., Feb. 21, 2003, at A1, and *The Station Nightclub Disaster: In the Fire*, Providence Sunday J., Sept. 21, 2003, at A16.

mit an adequate time for service of, and response to, the new Complaint and for the Court to deal with a number of motions to dismiss.

Presently before the Court is the Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), brought by TVL Broadcasting, Inc., and STL Broadcasting, Inc. These two corporations, at least one of which was formerly known as LIN Television Corporation, do business in Rhode Island as WPRI–TV, Channel 12. In the interest of simplicity, these corporations will be identified collectively in this opinion as "WPRI" or as Defendants.

WPRI was the employer of one of the owners of The Station, Jeffrey Derderian,[2] who worked for WPRI as an investigative reporter. In his capacity as an employee of WPRI, Jeffrey Derderian, and a WPRI cameraman,[3] were present at The Station the night of the fire. The Complaint alleges that WPRI is vicariously liable for Jeffrey Derderian's negligent actions the night of the fire, and that WPRI, through Jeffrey Derderian, caused death and personal injuries to the Plaintiffs. Defendants move for the dismissal of the counts asserted against them stemming from the actions of Jeffrey Derderian. For the reasons set forth below, the Court grants the Motion.

### Standard of Review

Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. F.R.C.P. Rule 12(b) states that as to subpart (6), if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In connection with the present Motion to Dismiss, Plaintiffs have presented additional material to the Court with their memoranda. However, because discovery has been and remains stayed in this litigation, neither side has had an opportunity to develop a complete record in support of their allegations or defenses. Consequently, the Court has chosen to exclude all extraneous information and affidavits, as well as all arguments in reliance thereon, in ruling on the present Motion to Dismiss.

At present, the Court adheres to the narrow and limited focus appropriate to a Motion to Dismiss, analyzing only the well-pleaded Complaint for allegations necessary to support the claims. In the course of its analysis, the Court will assume that all allegations are true. The allegations and all reasonable inferences to be drawn from them will be construed in the light most favorable to the Plaintiffs. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). As stated by the United States Supreme Court, "the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Defendants' motion will fail if "the well-pleaded facts, taken as true, justify recovery on any supportable legal the-

---

**2.** As part-owner of The Station Jeffrey Derderian is the subject of other allegations in the Complaint in ¶¶ 272–286, as well as criminal charges brought by the State of Rhode Island.

**3.** WPRI cameraman Brian Butler is also a defendant in this lawsuit (see ¶¶ 445–458 of the Complaint); however, Defendants have not moved for the dismissal of the allegations concerning his actions.

ory." *Cruz v. Melecio,* 204 F.3d 14, 21 (1st Cir.2000).

## The Complaint

At this stage in the litigation, as reflected by the First Amended Master Complaint, about 250 Plaintiffs have sued over 50 Defendants in an eighty-one count Complaint.[4] In the counts naming WPRI, Plaintiffs allege that the TV station "is vicariously responsible for the actions of ... defendant Derderian on February 20, 2003, performed in the course of [his] employment for TVL and WPRI Channel 12." Complaint, ¶¶ 449, 455. Those actions as set forth in the Complaint are as follows:

276. On February 20, 2003, Jeffrey Derderian acted at times material hereto as an investigative reporter for WPRI Channel 12, owned by TVL and/or STC. Together with Channel 12 photographer Brian Butler, also employed by TVL and/or STC, Jeffrey Derderian was investigating and preparing an analysis of nightclub safety for his employer intended to be aired in the wake of a fatal Chicago nightclub fire.

277. Jeffrey Derderian knew of several hazardous conditions in The Station nightclub on February 20th prior to 11:00 p.m., including without limitation that the club was substantially overcrowded, that it lacked adequate and lawful egress, that non-flame-retardant and defective egg crate foam had been placed on the interior finish of the walls surrounding the stage where the band would perform, and that Great White would use pyrotechnics in close proximity to these walls.

278. Had Jeffrey Derderian been investigating any other nightclub but one he owned and operated, he would have, armed with this knowledge, brought it to the attention of the owners and operators of the nightclub in an effort to aggressively promote a newsworthy story and/or to promote safety and prevent tragedy.

279. Jeffrey Derderian's failure to call attention to these defects as an individual, as owner of DERCO, LLC, and as an investigative reporter for TVL and/or STC working for WPRI Channel 12, caused deaths and severe personal injuries to plaintiffs.

Complaint, ¶¶ 276–279.

Plaintiffs craft their allegations in order to impute the knowledge that Jeffrey Derderian as landlord of The Station had of conditions in the club to Jeffrey Derderian as investigative reporter. Under the theory of dual agency, Plaintiffs then impute all the knowledge of Jeffrey Derderian, in both his capacities, to his employer, WPRI. See *First Catholic Slovak Union v. Buckeye Union Ins. Co.,* 27 Ohio App.3d 169, 170, 499 N.E.2d 1303, 1305 (1986).

For purposes of ruling on the Motion to Dismiss, the Court accepts the notion of dual agency, and imputes this "super-knowledge" to Jeffrey Derderian. However, the Court wants to emphasize that the allegations of negligence addressed in this Motion and the Court's opinion are limited to actions taken by Jeffrey Derderian *in the course of his employment with WPRI.* No actions that may or may not have been taken by Jeffrey Derderian in his capacity as owner or landlord of The Station are germane to the legal analysis herein, except to the extent that Jeffrey Derderian had knowledge of those actions. Furthermore, this decision does not affect the status of other allegations against DERCO, LLC, or against Jeffrey Derderian in his individual capacity, or in his capacity as

---

**4.** The so-called *Henault* complaint, filed under the caption C.A. 03–483, adopts the Master Complaint and also includes allegations against five additional defendants.

agent of DERCO, LLC, or as landlord, owner and/or operator of The Station. Likewise, this decision does not affect the status of the allegations against Brian Butler, or the allegations against WPRI that are derived from its employment relationship with Brian Butler.

### Vicarious Responsibility

■ Plaintiffs' theory of liability against WPRI relies on the doctrine of *respondeat superior*, pursuant to which an employer may be liable for the actions of an employee acting in the scope of his employment. This Court has previously addressed the subject of employer liability in *Brotko v. United States*, 727 F.Supp. 78 (D.R.I.1989), in which the Court wrote:

> To hold a private employer liable for the wrongful or negligent acts of an employee under Rhode Island *respondeat superior* law requires proof that the employee was acting in furtherance of his or her employer's business at the time that the harm occurred. Further, the employee must have acted within the express or implied authority of the employer.

727 F.Supp. at 81. Plaintiffs allege that Jeffrey Derderian was acting within the authorized scope of his employment for WPRI, and, for purposes of the Motion to Dismiss, the Court will accept this allegation as true. Responsibility for actions Jeffrey Derderian took or failed to take, in his capacity as investigative reporter for WPRI, may be attributed to WPRI.

■ The Court would like to call the reader's attention back to Paragraph 279 of the Complaint, wherein Plaintiffs allege that Jeffrey Derderian's failure to call attention to the known hazards "as owner of DERCO, LLC, and as investigative reporter for TVL and/or STC working for WPRI Channel 12, caused deaths of and personal injuries to plaintiffs."

While it may be possible, under Plaintiffs' dual agency theory, to impute the knowledge of Jeffrey Derderian, the landlord, to Jeffrey Derderian, the reporter, it is not possible to similarly commingle his conduct. No actions taken by Jeffrey Derderian as landlord of The Station and owner of DERCO, LLC, are attributable to WPRI because none of those actions were taken in the furtherance of the business of WPRI, or with the express or implied authority of WPRI. WPRI is only vicariously liable for actions taken or not taken by Jeffrey Derderian in his capacity as investigative reporter for the television station.

### Negligence

Plaintiffs allege that Jeffrey Derderian knew of the hazardous conditions that existed at The Station and that he failed to call the attention of the owners and operators of the nightclub to these hazards, and so failed to avert the fire which caused Plaintiffs' injuries. Plaintiffs allege that, as an investigative reporter, Jeffrey Derderian would have brought the hazards to the attention of the owners of the club, had it not been for the fact that he owned the club himself.

■ To make a *prima facie* case of negligence under Rhode Island law, Plaintiffs must show that 1) Defendants owed them a legal duty to refrain from negligent activities; 2) Defendants breached that duty; 3) the breach proximately caused Plaintiffs' injuries; and 4) actual loss or damages resulted. *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 466 (R.I.1996).

### Duty

■ The Rhode Island Supreme Court has pointed out that "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff." *Kenney Mfg. Co. v. Starkweather & Shepley, Inc.*, 643

A.2d 203, 206 (R.I.1994). The existence of a duty is a question of law to be determined by the court. *Ferreira v. Strack,* 636 A.2d 682, 685 (R.I.1994). The Rhode Island Supreme Court in *Ferreira* noted that there is no "universal test" to determine the existence of a duty, but instead the court employs "an *ad hoc* approach of considering all relevant factors." 636 A.2d at 685.

In *Banks v. Bowen's Landing Corp.,* 522 A.2d 1222 (R.I.1987), the Rhode Island Supreme Court considered the following factors:

(1) the foreseeability of harm to the plaintiff,

(2) the degree of certainty that the plaintiff suffered an injury,

(3) the closeness of connection between the defendant's conduct and the injury suffered,

(4) the policy of preventing future harm, and

(5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach.

522 A.2d at 1225.

The Rhode Island Supreme Court noted that foreseeability is "the linchpin in determining the existence of any duty owed." *Splendorio v. Bilray Demolition Co.,* 682 A.2d 461, 466. The notion of forseeability was most famously written about by New York's Justice Cardozo in *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928).

The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. This does not mean, of course, that one who launches a destructive force is always relieved of liability if the force, though known to be destructive, pursues an unexpected path.

162 N.E. at 100. For the purpose of the 12(b)(6) analysis, this Court must assume that Jeffrey Derderian knew about the foam insulation and its extreme flammability; that he knew that the club was overcrowded; that he knew that the exits were inaccessible and that the band intended to set off fireworks. Given the knowledge of all those hazards, gleaned both from his knowledge as landlord and as investigative reporter, the Court determines that the potential of a dangerous fire must have been foreseeable to Jeffrey Derderian. However something is still missing.

The *Palsgraf* Court wrote of "one who launches a destructive force." 162 N.E. at 100. In the present case, it was not Jeffrey Derderian, in his capacity as an investigative reporter, who was responsible for any of the destructive forces that contributed to the fire. He was merely present. As owner of The Station, he knew of the foam insulation, he knew of the crowding, the exit problems and of the band's plan to use pyrotechnics, and, because of his research into nightclub safety for the story for WPRI, he knew of the dangerous potential of these factors. He was present and endowed with knowledge, a knowledge perhaps greater than anyone else present. But, does this super-knowledge impose upon him a duty, or a special duty, to take control of the situation and try to change the course of events at the nightclub?

### Duty to Control Conduct of Third Persons

The general rule is stated in the Second Restatement of the Law of Torts:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

Torts, 2d., § 315.

This section of the Restatement has not been formally adopted by the Rhode Island Supreme Court, but the concepts expressed therein form the basis of that Court's legal reasoning in *Prospert v. Rhode Island Suburban Ry. Co.*, 28 R.I. 367, 67 A. 522 (1907). In that case, the Court held that the railway was not negligent towards its passenger when it failed to find refuge for her and her baby when the train was stalled on the tracks for over eleven hours, due to inclement weather. The Court held that the railway had a duty to plaintiff to carry her safely to her destination, and protect her from injury while in transit. The railway had done all it could to fulfill that duty in carrying her as far as it could go. The Rhode Island Supreme Court wrote,

It would indeed have been an act of humanity and kindness on the part of the conductor, as of any other person seeing the plaintiff helpless and exposed to injury from cold and snow, to have helped her to a place of safety, if possible; and the duty of so doing, resting in moral rather than in legal obligation, would have been a personal one, resting upon the conductor or the motorman as an individual, and not as an agent or servant of the defendant corporation, in the same way and to the same extent that it would have rested upon any individual, had the plaintiff seen fit to leave the car, and endeavor to struggle through the snow to a place of safety. The duty of assistance or rescue in distress in such case rests not in contract, or in legal obligation, but in moral obligation growing out of human relations and therefore, is not a proper ground of action for damages.

28 R.I. at 369, 67 A. 522.

Judge Pettine, writing for this Court in *Pietrafesa v. Board of Governors for Higher Educ.*, 846 F.Supp. 1066 (D.R.I.1994), expressed a similar concept concerning duty of affirmative action, in reliance on *Prosser and Keaton on the Law of Torts*, § 56 at 374 (5th ed.1984),

Liability for misfeasance may be caused by the injury of any person to whom harm may reasonably be anticipated as a result of the defendant's conduct. Liability for nonfeasance, however, requires the finding of some relationship between the parties of such character that public policy justifies the imposition of a special duty to act on the defendant.

846 F.Supp. at 1074.

In the present case, Plaintiffs allege that WPRI is vicariously liable for Jeffrey Derderian's failure to act when he could foresee the dangerous potential for fire in the nightclub. This is failure to take affirmative action, failure "to control the conduct of a third person as to prevent him from causing physical harm" in the words of the 2nd Restatement, or "nonfeasance" as it is identified in *Pietrafesa*. For the acts or omissions of Jeffrey Derderian to be legally actionable, the Court must determine that there was a special duty running from him, as a reporter, to Plaintiffs which required him to protect them from harm. In the alternative, the Court must determine that a special relationship existed between Jeffrey Derderian, again as a reporter, and those third parties whose acts may have directly caused Plaintiffs' injuries, and that, as a result of that special relationship, Jeffrey Derderian had a special duty to control those third parties.

## Special duty

■ In the *Pietrafesa* case, which involved an injury to a scientist on board an oceanic research vessel, the Court engaged in an extensive analysis of each defendant's job description to determine whether or not they owed a special duty to the plaintiff. Specifically, the Court required *"facts* which establish or even imply that [defendant] Biscaye was *charged* with a duty to provide for safety on board the Endeavor." 846 F.Supp. at 1077.

In *Irwin v. Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984), the Supreme Judicial Court of Massachusetts explained the "uniform set of considerations" that would enable the court to find a special duty.

> Foremost among these is whether a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so. It has been said that such foreseeability can be based on reasonable reliance by the plaintiff, impeding other persons who might seek to render aid, statutory duties, property ownership or some other basis.

467 N.E.2d at 1300. The S.J.C. goes on to catalog relationships wherein a special duty has been established, including college and resident student, restaurateur and patron, common carrier and passenger, theater owner and patron, supervisor and employee, motel owner and guest, mental hospital and patient, parent and child, bank and patron, childcare facility and child, etc. 467 N.E.2d at 1302–03.

In *Luoni v. Berube*, 431 Mass. 729, 729 N.E.2d 1108 (2000), the Supreme Judicial Court of Massachusetts wrote that, when derived from common law, a special duty "is predicated on a plaintiff's reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm." 729 N.E.2d at 1111. See also *Ferreira v. Strack*, 652 A.2d 965 (R.I.1995).

This Court can state with certainty that no patron of The Station would have observed Jeffrey Derderian and his cameraman at the nightclub and entertained a reasonable expectation that he or she would consequently be protected from any harm that might occur. Similarly, Jeffrey Derderian in his capacity as an investigative reporter had no such relationship with the third parties present at The Station such that he had a duty to exert control over their actions.

Again, turning to our neighbor to the north, the Supreme Judicial Court of Massachusetts, in analyzing a case of a social host's liability for a car accident involving an intoxicated party guest, stated, "We think the factor of control should continue to be the dominant consideration in a case of this type ... In the absence of a right to exercise effective control, the defendant was not subject to a duty to act to protect the plaintiffs." *Cremins v. Clancy*, 415 Mass. 289, 612 N.E.2d 1183, 1186 (1993).

The issue of control comes into focus in this case when the Court evaluates the choices confronting Jeffrey Derderian at The Station that night. Plaintiffs allege in the Complaint that Jeffrey Derderian had a duty to bring his knowledge of the hazards at The Station "to the attention of the owners and operators of the nightclub in an effort to aggressively promote a newsworthy story and/or to promote safety and prevent tragedy." Complaint, § 278. Jeffrey Derderian could have told the nightclub operators to send 100 patrons home to eliminate overcrowding, he might have warned them of the flammability of the foam insulation, or he might have tried to prevent the ignition of the fireworks. No doubt he wishes he had.

But, in the words of the Rhode Island Supreme Court in *Prospert*, this would have been "an act of humanity and kindness," resting, "not in contract, or in legal obligation, but in moral obligation growing out of human relations and therefore, is not a proper ground of action for damages." 28 R.I. 367, 369, 67 A. 522 (1907). Because Jeffrey Derderian, as an investigative reporter, had no special duty to protect the Plaintiffs, and no special duty to control the actions of third parties at the nightclub, he had no legal duty to take any kind of affirmative action at The Station on the night of the fire. His failure to take affirmative action does not constitute negligence, and no negligence can be vicariously imputed to WPRI. Furthermore, no additional discovered factual information could create a duty based on Plaintiffs' allegations. Therefore, it is the considered opinion of this Court that the Rhode Island Supreme Court would not impose a duty on an investigative reporter to warn the patrons or the owners of a nightclub of impending danger in this type of situation.

### First Amendment issue

The allegations against Defendants are quoted in their entirety earlier in this opinion. However, in their memorandum of law Defendants raise an additional legal issue that the Court will briefly address.

Defendants have responded at length to a claim that Plaintiffs either never raised, or, possibly, raised and withdrew: that WPRI had a duty to broadcast a news report, prior to the fire, describing the hazardous conditions in the nightclub that were known to Jeffrey Derderian, as a result of his investigative reporting. Any such duty, Defendants assert, would violate their constitutional right to free speech under the First Amendment, and represent an impermissible regulation of the editorial process. See *DeFilippo v. National Broadcasting Co., Inc.*, 446 A.2d 1036 (1982); *Brandt v. Weather Channel, Inc.*, 42 F.Supp.2d 1344 (S.D.Fla.1999). No claims alleging that Defendants had a duty to broadcast a warning about conditions at The Station can be found in the First Amended Master Complaint. Consequently, the Court determines that no such claim is a part of Plaintiffs' case, if indeed it ever was, and no claims of this nature need be responded to by Defendants, or addressed by the Court.

▆ Similarly, Plaintiffs have raised an additional issue in their memorandum, concerning Jeffrey Derderian's alleged conflict of interest in serving as an investigative reporter conducting an investigation of a property which he owned. This conflict, Plaintiffs assert, represents a breach of journalistic ethics. While this may or may not be true, any such breach is a matter between Jeffrey Derderian and his employer, and cannot form the basis of legal action undertaken by Plaintiffs against WPRI.

### Conclusion

For the aforementioned reasons, this Court grants Defendants' Motion to Dismiss portions of counts 37, 38 and 39; only to the extent that those counts allege vicarious liability for the alleged negligence of their employee Jeffrey Derderian. A judgment shall not enter at this time.

It is so ordered.