# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00301-CV

**Appellants, Henry L. Zumwalt and H.L. Zumwalt Construction, Inc. // Cross-Appellant,
The City of San Antonio, acting by and through its
San Antonio Water System Board of Trustees**

**v.**

**Appellee, The City of San Antonio, acting by and through its San Antonio Water System
Board of Trustees // Cross-Appellees, Henry L. Zumwalt and
H.L. Zumwalt Construction, Inc.**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
## NO. D-1-GV-08-001195, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Henry L. Zumwalt and H.L. Zumwalt Construction, Inc. (collectively "Zumwalt")

filed a third-party action against the City of San Antonio, acting by and through the San Antonio

Water System Board of Trustees, ("SAWS"), seeking to apportion liability for costs the State of

Texas and other governmental entities incurred in connection with fighting a fire at a dump site

Zumwalt owned and operated. Zumwalt alleges that, because SAWS limited the quantity and

permissible uses of the water it provided for fire-fighting activities, it is liable for costs under the

Texas Solid Waste Disposal Act ("TSWDA") as an "operator" of the dump site. *See* Tex. Health

& Safety Code Ann. §§ 361.271(a)(1), (a)(2) (West 2010) (defining "persons responsible for solid

waste"). The trial court granted SAWS's plea to the jurisdiction, concluding that "SAWS' conduct

in providing water to the property (or stopping it, limiting it or doing otherwise)" does not give rise to operator liability under the TSWDA. Zumwalt appeals the trial court's dismissal order. By cross-appeal, SAWS challenges the trial court's additional holding that the TSWDA waives governmental immunity.[1] We will affirm without reaching the issue presented in SAWS's cross-appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is before us on an appeal from an interlocutory order dismissing Zumwalt's claims against SAWS for lack of jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2011) (authorizing appeal of interlocutory orders granting or denying plea to jurisdiction by governmental unit). SAWS's plea to the jurisdiction challenged whether the TSWDA waives governmental immunity and, alternatively, whether Zumwalt had alleged facts sufficient to affirmatively demonstrate jurisdiction. Both of these issues are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To the extent SAWS's plea to the jurisdiction challenged the sufficiency of the pleadings to demonstrate jurisdiction, we must construe the pleadings liberally in Zumwalt's favor and look to his intent. *Id.*

---

[1] Although courts occasionally use the terms "sovereign immunity" and "governmental immunity" interchangeably, they are distinct concepts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign immunity" refers to the state's immunity from suit and liability, and its protection extends not only to the state but also to various divisions of state government, including agencies, boards, hospitals, and universities. *Id.* "Governmental immunity," by contrast, protects political subdivisions of the state, including counties, cities, and school districts. *Id.* The trial court used the term "sovereign immunity" in the order on appeal, but we will use the term "governmental immunity" in this opinion because the City of San Antonio is a political subdivision of the state.

In its plea to the jurisdiction, SAWS did not challenge the allegations in Zumwalt's pleadings; therefore, those allegations are taken as true for purposes of the plea to the jurisdiction and are recounted below. *See City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 241 (Tex. 2011).

Zumwalt owned and operated a dump site for brush, wood, and other materials in Helotes, Texas. A massive debris pile on the dump site caught fire on December 26, 2006. Initially, Zumwalt fought the fire on his own, using up to 50,000 gallons of water per day from two wells on the property. Shortly thereafter, the Texas Commission on Environmental Quality ("TCEQ") assumed control of the fire-fighting operations, hiring its own contractors for that purpose. The TCEQ asked SAWS to enter an agreement with one of the contractors to provide water for TCEQ's fire-fighting operation because SAWS was capable of providing significantly greater quantities of water than were otherwise available to the TCEQ. It is undisputed that SAWS had no obligation to provide water to the Zumwalt dump site, but it agreed to do so.

Zumwalt's dump site is located over the Edwards Aquifer recharge zone, and when the TCEQ's contractors poured millions of gallons of water directly on the fire, several water wells became contaminated and the Edwards Aquifer itself was threatened. In response, SAWS initially cut off its supply of water to the site. Although there remained water available to fight the fire through the same wells Zumwalt had been using, no fire-fighting operations occurred for approximately 29 days until SAWS agreed to resume supplying water. SAWS's agreement to provide water was not unconditional, however; SAWS limited both the quantity of water it would supply and the permissible uses of the water.

3

Initially, SAWS agreed to supply a maximum of 300,000 gallons of water per day for use on the debris pile, up to 200,000 additional gallons per day for other fire-fighting uses, and unlimited water as necessary to prevent injury, loss of life, or damage to other structures. The TCEQ further agreed that it would not engage or contract with other water suppliers and that SAWS would serve as the sole water purveyor.

In late February, further concerns arose about well-water and aquifer contamination. SAWS determined that none of its water could be used directly on the debris pile but authorized up to 500,000 gallons of water to be used for other purposes, including extinguishing the fire by incrementally transferring portions of the debris pile to a quenching pit.[2] This limitation meant that no water could be used to suppress smoke emanating from the debris pile.

The fire on Zumwalt's property was ultimately extinguished by the end of March 2007, approximately two months later than the TCEQ's contractors had initially estimated. The original time and cost estimates were apparently based on an assumption that there would be virtually unlimited access to SAWS's water supply. When that assumption proved inaccurate, the cost of the response event and the time to extinguish the fire increased dramatically.

In June 2008, the TCEQ sued Zumwalt for, among other things, recovery of TCEQ's fire-fighting costs. More than two years later, Zumwalt filed a third-party action against SAWS,

_____

[2] An attachment to Zumwalt's petition indicates that water continued to be used on the debris pile in March, generally at similar or greater quantities than authorized under the original agreement and in contravention of the amended agreement. In addition, this chart shows that total water usage often exceeded the maximum amount of water SAWS agreed to provide. Nonetheless, we assume the allegations stated in Zumwalt's petition are true, without regard to this apparently conflicting evidence.

seeking apportionment of liability under section 361.343 of the TSWDA, contribution, and offset of damages.[3] *See* Tex. Health & Safety Code Ann. § 361.343 (West 2010) (setting forth factors to be considered in apportioning costs for elimination of release or threatened release of solid waste among "persons responsible for solid waste").[4] Zumwalt alleged that the TCEQ, its contractors, and SAWS were all negligent and grossly negligent in conducting the fire-fighting operations on his property. Zumwalt claimed that this negligence caused the cost of fighting the fire to greatly exceed the cost estimates the TCEQ's contractors had initially provided for extinguishing the fire.

According to Zumwalt, SAWS's negligent acts were that it stopped, and then limited, the supply of fire-fighting water, which it did in order to protect the Edwards Aquifer from contamination. Zumwalt alleged that, by cutting off the entire water supply for at least 29 days and thereafter strictly rationing water needed to fight the fire and conduct smoke suppression operations, SAWS effectively controlled the cause of the contamination—the fire and smoke emanating from the debris pile and any contaminants being disbursed as the fire raged on—because water was essential to the fire-fighting operations. Because SAWS controlled the water, Zumwalt contends that SAWS exercised direct control over when, how, and how much fire-fighting and smoke-suppression

---

[3] In response to SAWS's plea to the jurisdiction, Zumwalt also asserted that SAWS was liable under section 361.344 of the TSWDA, which provides a cause of action for cost recovery by a liable party or third party. Tex. Health & Safety Code Ann. § 361.344 (West 2010). This provision was not mentioned in Zumwalt's third-party petition, however, and he contends on appeal that the trial court erred in adjudicating what he characterizes as an unpleaded and inapplicable theory of recovery.

[4] The parties dispute whether section 361.343 embodies a statutory contribution action or merely sets forth factors to be considered after liability has otherwise been established under the TSWDA. The resolution of this issue is not essential to the disposition of this appeal, and we do not reach it.

operations the contractors conducted, such that SAWS effectively controlled the Helotes Fire itself. By virtue of these acts of "control," Zumwalt asserts, SAWS became a "person responsible" for Zumwalt's solid waste under section 361.271 of the TSWDA. *Id.* § 361.271(a)(1), (a)(2) (creating liability for "operators" of solid waste facilities).

SAWS filed a plea to the jurisdiction asserting its governmental immunity from suit, alleging that (1) the TSWDA does not waive governmental immunity from third-party claims for monetary damages, and (2) even if the TSWDA waives immunity from such third-party suits, the court lacks jurisdiction because Zumwalt failed to plead a viable cause of action against SAWS and the defect is incurable. The second ground was based on the argument that, even assuming Zumwalt's factual allegations to be true, SAWS is not "a person responsible for solid waste" within the meaning of the statute. Although no evidence was required to respond to SAWS's plea to the jurisdiction, Zumwalt attached evidence to his response brief, which generally supported and amplified the allegations in his petition. Zumwalt's response also urged that he was entitled to an opportunity to replead in lieu of dismissal with prejudice.

The day before the hearing on the plea to the jurisdiction, Zumwalt requested a continuance to conduct further discovery in order to respond to SAWS's jurisdictional challenge. The trial court denied the motion for continuance and, two months after the hearing, issued an order concluding that, although the TSWDA waives governmental immunity, Zumwalt failed to plead a viable cause of action against SAWS. The court neither expressly permitted Zumwalt to amend his pleadings nor expressly disallowed him from doing so, but generally denied all relief not otherwise granted.

In four issues on appeal, Zumwalt contends that the trial court erred or abused its discretion in (1) concluding that SAWS's activities were insufficient to confer operator liability and thus effect a waiver of governmental immunity under the TSWDA; (2) denying Zumwalt's motion for a continuance to allow an opportunity for additional discovery; (3) denying Zumwalt an opportunity to replead his claims against SAWS; and (4) granting SAWS's plea to the jurisdiction under section 361.344 of the TSWDA because Zumwalt did not plead a cause of action under that theory. In a sole issue on cross-appeal, SAWS challenges the trial court's conclusion that the TSWDA waives governmental immunity.[5]

## DISCUSSION

### *"Persons Responsible for Solid Waste" under the TSWDA*

The TSWDA was intended to facilitate and encourage the prompt cleanup of solid waste and to "force those responsible for creating hazardous waste problems to bear the cost of their action." *R.R. Street & Co. v. Pilgrim Enters., Inc.*, 81 S.W.3d 276, 291 (Tex. App.—Houston [1st Dist.] 2001), *rev'd in part on other grounds*, 166 S.W.3d 232, 238 (Tex. 2005). Section 361.271 of the TSWDA delineates four categories of "persons responsible for solid waste," but only the following two categories are at issue in this case: (1) a current owner or operator of a solid waste facility, and (2) an owner or operator of a solid waste facility at the time of processing, storage, or

---

[5] Shortly before oral argument, Zumwalt and the State of Texas settled the claims between them. SAWS asserts that this settlement precludes Zumwalt from continuing the underlying contribution and apportionment action against SAWS and constitutes an additional basis for affirming the trial court's judgment. Zumwalt contends that the claims against SAWS remain viable because claims by other governmental entities against Zumwalt remain pending. Because the judgment can be affirmed on other grounds, we do not reach this issue.

disposal of any solid waste. Tex. Health & Safety Code Ann. § 361.271(a)(1), (a)(2). It is undisputed that SAWS has never held an ownership interest in the disposal site, and we will assume for purposes of this appeal that Zumwalt's disposal site constitutes a "solid waste facility" as that term is defined in the TSWDA.[6] *See id.* § 361.003(34) (West 2010) (definitions). Therefore, the only question we consider is whether, assuming the facts Zumwalt alleges are true, SAWS could be considered to have been an "operator" of the site during the fire-fighting operations.

Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek "first and foremost" in the statutory text. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). However, because the terms "operator" and "operate" are not defined in the TSWDA and there are no binding precedents construing them, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application of the plain language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). In construing these terms, we recognize that the TSWDA is our state counterpart to two federal environmental statutes: the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992 (2006), and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"),

---

[6] Zumwalt denies that his property constitutes a "solid waste facility" as that term is defined in the TSWDA. Tex. Health & Safety Code Ann. § 361.003(34) (West 2010). Pleading in the alternative, however, he contends that if that matter is determined adversely to him, he is entitled to apportionment of liability among all responsible parties, including SAWS. Therefore, for purposes of the issues on appeal, we assume without deciding that Zumwalt's property is a "solid waste facility" as that term is defined in the relevant statutes.

42 U.S.C. §§ 9601–9675 (2006). "While RCRA is designed primarily to regulate on-going treatment, storage, and disposal of solid and hazardous waste, CERCLA was enacted to facilitate the prompt clean-up of hazardous substances that have already been released into the environment and to ensure that those responsible for the hazardous substances bear the cost of their actions." *R.R. Street & Co., Inc. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 238 (Tex. 2005).

Because the TSWDA's purpose and statutory cost-recovery provisions are similar to CERCLA's, *see id.*, Zumwalt argues that we should look to CERCLA for guidance in defining the terms "operator" and "operate." CERCLA rather unhelpfully defines the term "owner or operator" as "any person owning or operating" a facility. 42 U.S.C. § 9601(20)(A)(ii). The circularity of this definition has led federal courts to give those terms their "ordinary or natural meaning," *United States v. Bestfoods*, 524 U.S. 51, 66 (1998), which is generally what is required under our own principles of statutory construction. *See City of Rockwall*, 246 S.W.3d at 625–26. Applying the ordinary and natural meaning of the term "operator," the United States Supreme Court has held that under CERCLA

> an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*Bestfoods*, 524 U.S. at 66–67.[7]  The Court summarized later that the verb "to operate" obviously means "something more than mere mechanical activation of pumps and valves, and must be read to contemplate 'operation' as including the exercise of direction over the facility's activities." *Id.* at 71.

SAWS urges that we decline Zumwalt's invitation to apply the *Bestfoods* definition of "operator" in this context, arguing that CERCLA authority is not instructive in this case because CERCLA's liability provisions and the TSWDA's liability provisions differ markedly in scope. Among the differences SAWS identifies are CERCLA's inclusion of an express waiver of sovereign immunity, 42 U.S.C. § 9620(a), and an exemption from strict liability for certain response actions. *Id.* § 9607(d).  Under the exemption, state and federal actors taking actions in response to incidents or emergencies created by the release or threatened release of a hazardous substance are subject to liability under CERCLA only upon a showing of specified culpability. *Id.*; *see also AMW Materials*

---

[7] Although Zumwalt does not propose that we consult RCRA for interpretive guidance, we note that the terms "owner" and "operator" are used extensively in that statute but are not defined except in the subchapter concerning regulation of underground storage tanks.  42 U.S.C. § 6991(3). In that subchapter, the term means "any person in control of, or having responsibility for, the daily operation of the underground storage tank."  When used in the applicable regulations, the term "operator" is defined as "the person responsible for the overall operation of a facility."  40 C.F.R. § 260.10.  As a term that is essentially undefined in RCRA, we assume the federal courts would apply the term's ordinary and natural meaning, resulting in a definition substantially similar to CERCLA's definition. *See Scarlett & Assocs., Inc. v. Briarcliff Ctr. Partners, LLC*, No. 1:05-CV-0145-CC, 2009 WL 3151089, at *12 (N.D. Ga. Sept. 30, 2009) ("Both parties agree and case law indicates that the definition of operator is the same under RCRA and CERCLA."); *Board of Cnty. Comm'rs v. Brown Group Retail, Inc.*, No. 08-CV-00855-LTB, 2009 WL 1108463, at *4 (D. Colo. Apr. 24, 2009) ("[T]he definition of 'operator' under RCRA is substantially the same as the definition under CERCLA."); *LeClerq v. Lockformer Co.*, No. 00 C 7164, 2002 WL 908037, at *2 (N.D. Ill. May 6, 2002) (same).  We have found no authority that suggests the contrary.  To the extent the RCRA definition of "operator" that is applicable to underground storage tanks is analytically helpful, it appears substantially similar to the definition the Supreme Court adopted for CERCLA in *Bestfoods*.

*Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 448 (2d Cir. 2009) (harmonizing exemption for emergency situations with its savings provision and scope of operator liability).  There are no corollary provisions in the TSWDA.  Thus, if the TSWDA waives immunity, as the trial court found, and if operator liability extended to governmental actors conducting emergency response actions, as Zumwalt contends, governmental responders could be *strictly liable* when assuming control of a facility to address releases or threatened releases of contaminants.  The practical import of this distinction would be that a responding party in an action under the TSWDA would have a defense whenever the government has initiated a cleanup action regardless of whether the governmental actors acted with care in conducting the cleanup operations.  As SAWS asserts, this cannot be what the legislature intended in enacting the TSWDA.  *Cf. Stilloe v. Almy Bros., Inc.*, 782 F. Supp. 731, 735 (N.D.N.Y. 1992) (making similar conclusion under CERCLA and holding that "when a state is acting *solely* in its statutory capacity to clean up a hazardous waste site, this activity does not raise its status to that of an operator within the meaning of CERCLA"); *United States v. Azrael*, 765 F. Supp. 1239, 1245–46 (D. Md. 1991) (same).  Such a result would be inconsonant with the purposes of CERCLA and the TSWDA to ensure that *those who benefit financially from conducting a commercial activity* should internalize the health and environmental costs of that activity into the costs of doing business.  *See U.S. v New Castle Co.*  727 F. Supp. 854, 864–65 (D. Del. 1989) (stating CERCLA's purposes).  A mere supplier of goods to such an operation—like an electric company or a water purveyor—although benefitting financially from the sale of its product, cannot be considered to thereby profit from the commercial operation itself in a way that would render it an "operator" of the customer's business even if the goods provided are essential to conducting the

11

onsite commercial operations. *See Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155, 157 (7th Cir. 1988) (supplier of chemical used to treat lumber not "operator" of wood treatment facility even though supplier also designed and built facility, trained employees how to operate machinery, and licensed its trademark for use in connection with treated wood).

SAWS also cites notable differences between CERCLA and the TSWDA regarding key terms used in the liability provisions. Although CERCLA's extension of liability to a current "owner" or "operator" of a "facility" or a former owner or operator of a facility "at the time of disposal of any hazardous substance" is similar to the TSWDA's owner-and-operator-liability provisions, CERCLA's definition of "facility" is much broader than the TSWDA's definition of "solid waste facility."[8] In addition, the definition of "solid waste" under the TSWDA is broader than, and inclusive of, the term "hazardous substance" under CERCLA. *See* Tex. Health & Safety Code Ann. § 361.003(11) (hazardous substance definition), (34) (solid waste definition), 42 U.S.C. § 9601(14) (hazardous substance definition). According to SAWS, these are significant variances that counsel against relying on CERCLA authority in this case, but why that is so is not readily apparent.

Nevertheless, assuming without deciding that the scope of operator liability under the TSWDA is essentially coextensive with operator liability under CERCLA, we conclude that SAWS

---

[8] The TSWDA defines a "solid waste facility" as "all contiguous land, including structures, appurtenances, and other improvements on the land, used for processing, storing, or disposing of solid waste." Tex. Health & Safety Code Ann. § 361.003(36). A "facility" under CERCLA is more expansively defined as "any building, structure, installation, equipment, pipe or pipeline . . . well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or . . . any site or area where a hazardous substance has . . . come to be located." 42 U.S.C. § 9601(9).

12

was not an operator of Zumwalt's property as alleged. SAWS's "control" over the response action at Zumwalt's site was, at most, indirect and did not rise to the level of an "operator" contemplated by the Supreme Court in *Bestfoods*. Although Zumwalt contends that SAWS satisfied the *Bestfoods* standard and "directly" controlled the fire-fighting operations at the dump site, we disagree. The only thing SAWS had control of was its own water supply, and although that control had an *effect* on the fire-fighting operations, it is not equivalent to *control* over operations at the site. We hold that the type of indirect, attenuated impact that SAWS had in this case is not sufficient to confer "operator" liability under the TSWDA. Zumwalt cites no authority compelling a contrary conclusion, nor have we found any. *Cf., e.g.*, *Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 928–29 (5th Cir. 2001) (holding that operator liability may exist for contractor who installed monitoring wells at hazardous site, allegedly causing contaminants to spread); *United States v. Township of Brighton*, 153 F.3d 307, 316 (6th Cir. 1998) ("operator" liability may exist for governmental actor that took control of dump, including taking responsibility for ameliorating unacceptable conditions at dump, making decisions about environmental compliance, and arranging for bulldozing and other maintenance); *FMC Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833, 837 (3d Cir. 1994) (United States was liable as "operator" for wartime activities at facility where it "was involved directly and substantially with the facility's production activities and management decisions"); *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341–42 (9th Cir. 1992) (stating that operator liability may exist for contractor working on development site excavating and spreading contaminated soil over uncontaminated areas); *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1559 n.13 (11th Cir. 1990) (evidence showed that secured creditor

13

actively asserted control over disposal of hazardous wastes by prohibiting debtor from selling several barrels of chemicals to potential buyers, which barrels then remained at facility until removal by EPA), *superseded by statute*, 42 U.S.C. § 9601(20)(F)(i)(II); *Ganton Tech. v. Quadion Corp.*, 834 F. Supp. 1018, 1022 (N.D. Ill. 1993) (determining that commercial contractor hired to clean up hazardous substances onsite could be "operator" under CERCLA); *see also United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1449–50 (E.D. Cal. 1995) (government's actions providing incentives and promoting private entity's wartime manufacture of substances that resulted in hazardous-waste contamination were insufficient to constitute control over mine's activities). Nor have we found any cases extending the reach of operator liability to a third-party purveyor of goods to be used on a site subject to a response action (especially substances that do not otherwise constitute "solid waste" or "hazardous substances"). *Cf. Edward Hines Lumber*, 861 F.2d at 156–58 (vendor who designed and built wood-treatment plant, trained plaintiff's employees to operate machinery, licensed plaintiff to use its trademark in connection with treated wood, and supplied toxic chemical plaintiff used to treat wood did not qualify as "operator" under CERCLA). Therefore, to the extent Zumwalt also argues that SAWS was an operator because it provided water to the site, which allegedly contributed to well-water contamination, we conclude that such conduct does not fall within the ambit of operator liability under the TSWDA.

What Zumwalt complains about in this case is the expansion of time it took to fight the fire (and concomitant increase in costs) that resulted from SAWS's refusal to provide more water or to let it be used unconditionally. If this conduct equated to "control" sufficient to confer "operator" liability on SAWS, then SAWS arguably would also have been an "operator" if it had

14

refused to provide *any* water to support the response action, even though it was under no obligation to do so. This would be an absurd result that clearly could not have been intended by the legislature. After reviewing the language and statutory framework of the TSWDA, as well as the policies underlying the statute and analogous CERCLA authority, we hold that the legislature did not intend operator liability under the TSWDA to sweep so broadly as to encompass SAWS's alleged actions in this case. Even though the TSWDA may have broad legislative objectives, "'statutes have not only ends but also limits.'" *Edward Hines Lumber*, 861 F.2d at 157. We overrule Zumwalt's first appellate issue.

### *Opportunity to Amend Pleadings*

In his third appellate issue, Zumwalt argues that the trial court erred because it signed an order of dismissal without providing him an opportunity to amend his petition. A plaintiff generally deserves a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction. *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). While the general rule expresses a preference for allowing an amendment, a plaintiff can waive this opportunity through inaction. *Cassidy v. TeamHealth, Inc.*, No. 01-08-00324-CV, 2009 WL 2231217, at *7 (Tex. App.—Houston [1st Dist.] July 23, 2009, pet. denied) (mem. op.) (stating plaintiffs had several opportunities both before and after summary judgment was granted to amend pleadings or request opportunity to amend, and no indication trial court denied such opportunity); *Haddix v. American Zurich Ins. Co.*, 253 S.W.3d 339, 347 (Tex. App.—Eastland 2008, no pet.) (finding waiver of opportunity to amend when plaintiff made no effort to amend petition before or after trial court signed dismissal order and

15

never indicated how pleading deficiencies could be addressed in amended pleading); *see also Kassen v. Hatley*, 887 S.W.2d 4, 13 n.10 (Tex. 1994) (stating plaintiffs waived complaint to dismissal by summary judgment aimed solely at their pleadings when they did not request opportunity to amend their petition in response to trial court's summary judgment).

In *Koseoglu*, the supreme court "generally" endorsed the proposition that "'a plaintiff may stand on his pleadings in the face of a plea to the jurisdiction unless and until a court determines that the plea is meritorious.'" 233 S.W.3d at 839 (quoting lower court's opinion). In that case, however, the plea to the jurisdiction had been granted by the court of appeals; thus, the plaintiff had not had a reasonable opportunity to amend in the trial court and was entitled to a remand if the defects were curable. *Id.* at 839–40. In contrast, Zumwalt did have an opportunity to file an amended pleading or request an opportunity to replead after the trial court ruled on the merits of the plea, but he failed to do so. Although Zumwalt requested an opportunity to replead in his response to the plea to the jurisdiction, he made no effort to amend his petition in the trial court proceedings below—either before the hearing on the plea to the jurisdiction or after the trial court granted the plea. Nor did he ever advise the trial court what he could plead that would address the jurisdictional deficiencies. There is also no indication in the record that the trial court precluded Zumwalt from offering an amended pleading. Accordingly, we hold that Zumwalt is not entitled to a remand in order to amend his pleadings because he already had a reasonable opportunity to amend in the trial court but failed to do so. Parties are entitled to reasonable opportunities to amend, not unlimited opportunities.

16

Likewise, on appeal, Zumwalt has not described proposed amendments that he could make that would bring SAWS within the scope of the TSWDA. The significance of this omission is placed in perspective when one considers that, at the time Zumwalt filed his third-party action against SAWS, the case had already been pending more than two years, and at the time of the hearing on the plea to the jurisdiction, significant discovery had been conducted, including document production and depositions of the major players in the response action. The record indicates that there were extensive inquiries into SAWS's role in the response action during the course of discovery. If there are additional material facts that could be pleaded, Zumwalt has failed to identify them. At oral argument, in response to the Court's query regarding possible amendment, Zumwalt's counsel suggested that he could add the amount of compensation SAWS was paid for the water, thus showing the extent to which SAWS was acting as a commercial purveyor of water. The addition of this allegation, however, even if true, would not change our analysis of the operator inquiry, nor the result, in this appeal. Even if the better practice would have been for the trial court to specifically grant Zumwalt an opportunity to amend, we cannot say the court committed reversible error in failing to do so under the circumstances of this case. Zumwalt's third issue is overruled.

***Denial of Motion for Continuance***

Zumwalt also challenges the trial court's denial of his request for a continuance to conduct additional discovery before the hearing on the plea to the jurisdiction. A trial court's ruling on a motion for continuance to conduct additional discovery is reviewed for abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 162 (Tex. 2004). An appellate court may reverse for abuse of discretion only if it finds that the trial court's decision was so arbitrary and unreasonable

17

as to amount to a clear and prejudicial error of law. *Id.* There is no abuse of discretion where a trial court could reasonably conclude that additional discovery was unnecessary and irrelevant to the legal issues in the case. *Id.*

In some cases, evidence is essential in determining whether the trial court has jurisdiction over a governmental entity. *See Miranda*, 133 S.W.3d at 227 (observing that trial court is required to "consider relevant evidence submitted by the parties" when such evidence is "necessary to resolve the jurisdiction issues raised"). In this case, however, SAWS's plea to the jurisdiction did not include or rely on evidence; rather, it was based solely on the statutory language and the allegations in Zumwalt's pleadings, which SAWS did not dispute for purposes of its plea. Thus, it was not necessary for Zumwalt to present evidence to create a fact issue as to whether SAWS had ever "operated" Zumwalt's solid waste facility. *See id.* at 226. The fact that Zumwalt chose to file evidence in its response does not change the character of SAWS's plea. *See Employees Ret. Sys. of Tex. v. Putnam, LLC*, 294 S.W.3d 309, 323 (Tex. App.—Austin 2009, no pet.) (there is no need to allow for discovery before ruling on plea where there is no fact issue to be resolved). This is true even if the trial court considered the evidence Zumwalt presented, which its order seems to indicate, because the evidence merely substantiated and amplified the allegations in Zumwalt's pleadings. The court was not obligated to review that evidence, but we fail to see how Zumwalt could have been harmed by its doing so. Nor can we ascertain why Zumwalt would be entitled to conduct more discovery and present more evidence as a result. Because Zumwalt failed to demonstrate that additional discovery was necessary and also failed to identify what material facts

18

could potentially be uncovered with the additional discovery requested, we overrule Zumwalt's second issue.

***Liability under Section 361.344 of the TSWDA***

In his final appellate issue, Zumwalt contends that the trial court erroneously adjudicated a non-pleaded and non-applicable theory of recovery in the order granting SAWS's plea to the jurisdiction. In addition to concluding that Zumwalt's pleadings failed to state a claim for operator liability under the TSWDA, the trial court also determined that Zumwalt could allege no facts that would authorize a cost recovery action against SAWS under section 361.344 of the TSWDA. *See* Tex. Health & Safety Code Ann. § 361.344 (West 2010) (governing cost recovery by liable party or third party). Although Zumwalt's response to SAWS's plea to the jurisdiction expressly asserted that he was entitled to "contribution, apportionment and offset damages, if any, according to §§ 361.343 and 361.344 of the TSWDA," Zumwalt contends on appeal that (1) he did not plead a theory of recovery under section 361.344, (2) that section does not apply to the pleaded facts, and (3) the trial court erred in granting the plea to the jurisdiction on that basis. Because we have determined that the trial court's dismissal order can be affirmed on other grounds, any error in the trial court's order dismissing the lawsuit against SAWS under section 361.344 is harmless. *See* Tex. R. App. P. 44.1 (error of law reversible only if error "probably caused the rendition of an improper judgment"). We therefore overrule Zumwalt's fourth issue.

19

**CONCLUSION**

For the reasons stated, we affirm the trial court's dismissal order.

_____
J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Goodwin

Affirmed

Filed:   May 17, 2012